# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
              Plaintiff, )
                )
          v. )       CAUSE NO.: 2:13-CV-245-RLM-PRC
                )
SVT, LLC d/b/a ULTRA FOODS, )
            Defendant. )

## OPINION AND ORDER

This matter is before the Court on (1) the EEOC's Motion for Protective Order Against Ex Parte Contact of EEOC Class Members [DE 30], filed by Plaintiff Equal Employment Opportunity Commission ("EEOC"); (2) the EEOC's Motion for Order Allowing Ex Parte Contact with SVT's Former Employees and Current, Non-Managerial Employees [DE 33], filed by the EEOC; and (3) Defendant's Combined Motion for Protective Order to Govern Ex-Parte Communications by the Parties and Leave to Conduct Discovery [DE 35], filed by Defendant SVT, LLC d/b/a Ultra Foods ("SVT"), all of which were filed on November 20, 2013. A response to each motion was filed on December 20, 2013. The Court requested that no reply briefs be filed.

This cause of action was brought by the EEOC under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), alleging that SVT rejected charging party Tiffany Swagerty and a class of other qualified females for night crew stocker positions based on their sex, female, since at least January 1, 2010. The EEOC has indicated its intent to seek an award of damages for each class member, including back pay, future pay, and compensatory and punitive damages. Prior to commencing this action, the EEOC conducted an investigation spanning two years, including potential class and SVT employee interviews and the production of thousands of pages of records by SVT.

Because the motions brought by both parties raise essentially the same issues, the Court addresses each substantive issue raised by the parties, rather than the individual motions, in turn.

**A. Ex Parte Contact by SVT with EEOC Class Members and Potential Class Members**

At the end of its pre-suit investigation, the EEOC identified 33 class members, including Ms. Swagerty, who were allegedly not hired by SVT in favor of males. As of the date of the EEOC's motions, approximately 15 of these female applicants had indicated their desire to have the EEOC represent their interests in this matter; at the time of its December 20, 2013 response brief, the potential class had grown to 34 individuals, and 17 female applicants had indicated their desire to have the EEOC represent their interests in this matter. SVT contends that at least one of the 33 initial potential class members identified by the EEOC is actually a male.

The EEOC asks the Court to issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) and Northern District of Indiana Local Rule 26-2, barring SVT from informal, ex parte contact with the EEOC's charging party Tiffany Swagerty and the EEOC's class members, broadly defined by the EEOC as "any other class member for whom the EEOC seeks relief as a victim of unlawful employment discrimination." (Pl. Br., docket entry 31, p.1). SVT represents that, contrary to the EEOC's assertion, SVT does not intend or request to conduct informal discovery or ex parte communication with Tiffany Swagerty or any of the identified and named class members *for whom the EEOC can prove an established attorney-client relationship.* The EEOC agrees to provide SVT with the name of any female applicant the EEOC believes was unlawfully discriminated against but who has indicated that she does *not* wish to participate in this lawsuit or does *not* wish to have the EEOC represent her interests; the EEOC does not object to SVT

contacting these women. However, it appears that the EEOC has not yet identified any such individuals.

This leaves a dispute over SVT's ability to informally contact ex parte the identified potential class members who have not yet indicated to the EEOC whether they do or do not wish to be represented by the EEOC in this matter. Additionally, the EEOC seeks to restrict ex parte contact by SVT with "female class members who have *yet to be determined*" pending SVT's responses to the EEOC's written discovery requests. The EEOC requests a protective order requiring SVT to adhere to certain parameters concerning communications with these unidentified individuals. In contrast, SVT requests that no restrictions be placed on its ability to engage in informal discovery of (1) identified potential class members or (2) any yet-to-be identified class members, which SVT describes as "the remaining 'applicant pool,'" until an attorney-client relationship is established with the EEOC and disclosed to SVT.

In support of its motion, the EEOC cites *EEOC v. International Profit Associates, Inc.*, 206 F.R.D. 215, 218-19 (N.D. Ill. 2002), as well as Rule 4.2 of the ABA Model Rules of Professional Conduct and Indiana Rules of Professional Conduct.[1] As an initial matter, the EEOC misquotes *International Profit Associates* as providing that "communications between 'prospective class members and the EEOC counsel and their agents are protected from disclosure by the attorney-client privilege *and ex parte contact by Defendants and their legal counsel is improper.*'" (Pl. Mot. at docket entry 30 (quoting *Int'l Profit Assocs.*, 206 F.R.D. at 218-19) (emphasis added). The italicized portion of the quotation does *not* appear in the case. Rather, the court addressed solely the question of whether interview notes prepared by EEOC attorneys or their agents after the initiation of the

---

[1] "Indiana's Rules of Professional Conduct and the *Seventh Circuit Standards of Professional Conduct* (an appendix to these rules) govern the conduct of those practicing in the court." N.D. Ind. L.R. 83-5(e).

3

lawsuit were protected material pursuant to the attorney-client privilege and the work product doctrine, concluding that they were. *Id.* at 217. The court did not, as suggested by the EEOC, address whether the defendant could make ex parte contact with prospective class members who were not represented by the EEOC.

In its ruling, the court in *International Profit Associates* relied on cases in which the attorney-client privilege was found to exist when the individuals had identified themselves to the EEOC as persons seeking representation in the lawsuit. *Id.* at 219 (citing *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, 462 (N.D. Ill. 1990) (holding that "communications between the EEOC attorneys and the employees represented in ADEA cases brought by the EEOC are privileged");[2] *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, No. 96-1192, slip op. at 6 (C.D. Ill. Oct. 23, 1997) ("[C]ommunications [between the EEOC and the 289 identified claimants] regarding the lawsuit, including upcoming depositions, therefore fall within a permissible range of attorney-client communications" because the 289 identified plaintiffs at some point had identified themselves to the EEOC as persons seeking representation in the lawsuit)). In *International Profit Associates*, all the women interviewed by the EEOC Legal Division in that lawsuit had expressed their desire to be represented by the EEOC. *Id.* Thus, while *International Profit Associates* supports the request by the EEOC to protect its communications with the women who join the class in this case, it does not support the EEOC's position that SVT should be prevented from informally contacting potential or prospective class members who have not yet established an attorney-client relationship with the EEOC in this case.

---

[2] *Bauman v. Jacobs Suchard, Inc.*, was not a lawsuit brought by the EEOC but rather was an "opt-in" collective action brought under the ADEA, in which the EEOC intervened as a plaintiff but did not represent employees. 136 F.R.D. 460 (N.D. Ill. 1990). In a separate lawsuit, the EEOC brought an ADEA action against the defendant on behalf of certain former employees, none of whom were employees in the *Buaman v. Jacobs Suchard* action. *Id.* at 461.

The EEOC also relies on Indiana Rule of Professional Conduct 4.2, which provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Ind. R. Prof'l Conduct 4.2; *see also* ABA Model Rules of Prof'l Conduct R. 4.2. The EEOC recognizes that it does not yet have a formal attorney-client relationship with the identified potential class members who have not yet communicated that they wish to be represented by the EEOC in this case; rather, the EEOC asserts that it is "essentially acting as de facto counsel" on their behalf. (Pl. Br., docket entry 31, p. 3). Thus, the EEOC argues that informal interviews by SVT with identified potential class members without prior consent of the EEOC would violate ethical rules. In support, the EEOC cites a series of cases, none of which supports the EEOC's position in this Title VII case.

First, the EEOC cites cases that, like *International Profit Associates*, address solely whether communications between the EEOC and class members are subject to the attorney-client privilege. In *EEOC v. HBE Corp.*, a Title VII case cited in *International Profit Associates*, the court found that prior communications between the charging party and the EEOC are protected by the attorney-client privilege. 4:93-CV-722, 1994 WL 376273, at *2 (E.D. Mo. May 19, 1994) (citing *Bauman*, 136 F.R.D. at 461; *Gormin v. Brown-Forman Corp.*, 133 F.R.D. 50, 53 (M.D. Fla. 1990)). The court reasoned that the charging party and the EEOC had common interests because they had both sued the defendant for alleged discrimination, and the court relied on the charging party's affidavit testimony that he had sought legal advice from the EEOC attorney with the understanding that their communications would be confidential. The court in *HBE Corp.* did not address whether defense counsel could informally and ex parte contact potential class members.

In *EEOC v. Georgia-Pacific Corp.*, a Title VII case cited by the EEOC, the court allowed the invocation of the attorney-client privilege by the EEOC with respect to contacts with an individual plaintiff because the plaintiff's communications showed that she was seeking advice and expected the communications to remain confidential. No. 69-101, 1975 WL 267, at *2-3 (D. Ore., Nov. 10, 1975). Similarly, in *EEOC v. Johnson & Higgins, Inc.*, which was an ADEA action brought by the EEOC, the court addressed the issue of whether prior communications with EEOC attorneys before the individuals had decided to side with the EEOC are covered by the attorney-client privilege; in its analysis, the court considered whether the individuals in fact viewed the EEOC as their attorney at the time of the statements in question. No. 93 CIV. 5481, 1998 WL 778369, at *3-6 (S.D.N.Y. Nov. 6, 1998).

These cases cited by the EEOC support the position, with which SVT agrees, that SVT may not have ex parte contact with class members who have indicated to the EEOC that they wish for the EEOC to represent them in the instant lawsuit, essentially establishing an attorney-client relationship with the EEOC attorneys. However, these cases do not address the question of whether SVT can have ex parte contact with identified potential class members who have not yet expressed such a desire or with yet-to-be identified class members.

Second, the EEOC cites cases to suggest that it is the "de facto counsel" for any identified potential class member or yet-to-be identified class member. However, unlike the instant Title VII case, the cited cases are either ADEA cases or Title VII cases that cite ADEA cases without analysis. First, in *EEOC v. Tony's Lounge, Inc.*, a Title VII case, the court addressed the same question considered by the other cases cited by the EEOC above, namely whether communications between the EEOC and a prospective class member are protected by the attorney-client privilege.

08-cv-677, 2010 WL 1444874, at *2 (S.D. Ill. Apr. 9, 2010). Although it was not clear what the individual perceived her role to be at the time she made her statements to the EEOC, the court held that, because she had not affirmatively opted out of the class and because she was in the class of individuals on whose behalf the EEOC was seeking relief, her statements were protected. *Id*.[3] The court further held that, even if she had opted out, the statements she made would still be protected by the attorney-client privilege because of her status at the time of the statements as a prospective class member. The court relied in part on *International Profit Associates* in making this holding. The court did not address whether counsel for defendant could make ex parte contact with potential class members.

The court in *Tony's Lounge* also relied on the "de facto counsel" language in *Bauman v. Jacobs Suchard*, which was an ADEA case. 2010 WL 1444874, at *2 (quoting *Bauman*, 136 F.R.D. at 461). First, *Bauman*, like the cases above, addressed the issue of whether the attorney-client privilege applies to communications between prospective class members and the EEOC and did not address the propriety of contact with potential class members by opposing counsel. More importantly, however, the court in *Bauman* found that the EEOC was "de facto counsel" for the class individuals in that ADEA case because of the nature of the ADEA case brought under 29 U.S.C. § 626(b):

> The right of any person to bring suit under the ADEA is terminated when a suit is brought by the EEOC. 29 U.S.C. § 626(c)(1). *See also id.* § 216(b), (c). The EEOC is then authorized to receive damages on behalf of the individual employees and the employees are precluded from bringing any subsequent suit. *Id.* § 216(c). While there does not appear to be any formal attorney-client relationship, the EEOC, through its attorneys, are essentially acting as *de facto* counsel for the employees. *Cf. Donovan*

---

[3] There was a question as to whether the prospective class member had decided not to be represented by the EEOC, but the court found that the individual had not affirmatively represented that she did *not* wish to be represented by the EEOC. *EEOC v. Tony's Lounge, Inc.*, 08-cv-677, 2010 WL 1444874, at *2 (S.D. Ill. Apr. 9, 2010).

> *v. Teamsters Union Local 25,* 103 F.R.D. 550, 552 (D.Mass.1984). There is no sound reason why employers in such cases should have available the protection of the attorney-client privilege whereas employees would not. Communications between the EEOC attorneys and the employees represented in ADEA cases brought by the EEOC are privileged.

*Bauman*, 136 F.R.D. at 461-62.

In contrast, in a Title VII case brought under § 2000e-5(f), the right of the individual to bring a private action does not terminate with an EEOC lawsuit, and, thus, the relationship between the EEOC and potential class members is not the same as in an ADEA case. *See EEOC v. Nebco Evans Distrib.*, No. 8 CV 96-644, 1997 WL 416423, at * 4 (D. Neb. June 9, 1997). In *Nebco*, cited by the EEOC in this case, the court directly addressed whether it should prohibit counsel for the defendant from engaging in informal communication with the individuals whose interests were represented by the EEOC, with the EEOC arguing that any such communication would be ex parte in violation of Nebraska ethical rules regarding communicating with represented individuals. The EEOC in the instant case makes the same argument, invoking Indiana Rule of Professional Conduct 4.2.

The court in *Nebco* framed the issue by considering whether the EEOC represented the individual applicants. The defendant relied on *General Telephone Company of the Northwest v. EEOC*, 446 U.S. 318 (1980), for the position that no attorney-client relationship existed. *General Telephone*, like the instant lawsuit but unlike *Nebco*, was a Title VII sex discrimination case brought by the EEOC, and the Supreme Court considered whether the EEOC needed to comply with the class representative certification requirements of Rule 23. 446 U.S. at 326. In its analysis, the Supreme Court, looking to the enforcement provisions of Title VII, stated that the private action rights contained in the enforcement provisions "suggest that the EEOC is *not* merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered

representative actions subject to Rule 23." 446 U.S. at 326 (emphasis added). The Court in *Nebco* found *General Telephone* to not be controlling because, "[u]nlike the Title VII enforcement provisions, under the ADEA, the right of an individual to bring a private action 'shall terminate upon the commencement of an action by the [EEOC] to enforce the right of such employee under this subchapter.'" 1997 WL 416423, at *4. "Further, 'while Title VII explicitly provides for intervention by both the EEOC and the aggrieved party, the ADEA makes no mention of intervention whatsoever.'" *Id.* (quoting *EEOC v. Wackenhut Corp.*, 939 F.2d 241, 244 (5th Cir. 1991)). The court agreed with the rationale that, "because Congress created a private right of action under the ADEA but cut it off once the EEOC begins its action, 'the conclusion that the EEOC is the individual's representative in ADEA suits . . . seems inescapable.'" *Id.* (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 495 (3d Cir. 1990)). Thus, *Nebco* is not persuasive in this Title VII case.

The Supreme Court in *General Telephone* held that Federal Rule of Civil Procedure 23 governing class actions does not apply to actions brought by the EEOC in its representative capacity, explaining that the EEOC files such lawsuits not only to seek relief on behalf of the charging party and any class but also to vindicate the public interests. 446 U.S. at 333-34. Following *General Telephone*, the EEOC is not a proxy for the potential members of this Title VII class identified by the EEOC until those individuals indicate that they wish to be represented by the EEOC in this action. This Court made a similar ruling in *EEOC v. Dana Corp.*, 202 F. Supp. 2d 827, 830 (N.D. Ind. 2002), a Title VII case brought for alleged racial harassment. In that case, the defendant sought to conduct ex parte interviews with certain other employees that had not yet established an attorney-client relationship with the EEOC but who had been identified as potential class members. The court held that, "until certain individuals characterized as 'potential class members' establish an attorney-

client relationship, [defendant] is permitted to engage in such ex parte communication. However, counsel for [defendant] runs the risk of running afoul of Rule 4.2 should it conduct any ex parte communication with a represented party and should be extremely careful before proceeding along this path in conducting such interviews." *Id*. at 830. The court was persuaded that "such ex parte interviews may be allowed to the extent that the EEOC cannot demonstrate the establishment of an attorney-client relationship." *Id*.

The EEOC has not identified any Title VII case brought by the EEOC in which a defendant employer was precluded from informally contacting identified potential class members who had not yet indicated a desire to be represented by the EEOC in the litigation. In contrast, this court, in *Dana*, found such contact proper. Not allowing SVT to conduct such informal discovery would impair its ability to investigate the EEOC's claims, including with its own former and current non-managerial employees. Thus, the Court finds that SVT is permitted to engage in informal, ex parte communications with individuals whom the EEOC has identified as being potential class members but who have not communicated to the EEOC that they wish to be represented by the EEOC in this lawsuit, which would establish the requisite attorney-client relationship to cut off the requested ex parte contact. *See Dana*, 202 F. Supp. 2d at 830.

To facilitate discovery and to protect those individuals who are part of the class, the EEOC is ordered to identify for SVT those 17 women who have agreed to be part of the class and to be represented by the EEOC in this lawsuit as well as any identified potential class members who have communicated that they do *not* wish to participate in the lawsuit or be represented by the EEOC. The EEOC is further ordered to provide at least a weekly, or more often if appropriate, update to SVT

as to the addition or exclusion of additional individuals in relation to the class during the time period for discovery in this case.

Finally, the Court considers the EEOC's request to constrain SVT from communicating with yet-to-be determined class members who may want their interests represented by the EEOC in this litigation. The EEOC has sought, but SVT has not yet produced, the identification of female applicants rejected by SVT for the time period beginning after the discovery obtained during the EEOC's pre-suit investigation. The EEOC argues generally that the yet-to-be determined class members, should they wish for the EEOC to represent their interests and seek relief on their behalf, are entitled to protection against improper contact. In support, the EEOC cites Rule 4.3 of the Indiana Rules of Professional Conduct, which concerns dealing with unrepresented persons and provides:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such person are or have a reasonable possibility of being in conflict with the interests of the client.

Ind. R. Prof'l Conduct 4.3.

Thus, the EEOC asks that the Court enter a protective order to ensure that SVT's communications with yet-to-be determined claimants conform with the ethical rules, specifically, that, if SVT makes contact with any female applicant who it has rejected for hire since August 2011 and during times it hired male night crew stockers, SVT must make specific representations and take

specific actions with regard to those communications.[4] In support of this request, the EEOC cites *Nebco*, which, again, is inapplicable to the instant issue because that suit was brought under the ADEA.

In response, SVT contends that Rule 4.3 only requires that "a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person," and that the lawyer avoid misunderstandings and not give legal advice to the unrepresented person. *See* Ind. R. Prof'l Conduct 4.3 and Comment 1. SVT opposes any additional specific constraints or obligations proposed by the EEOC. Although the EEOC does not acknowledge the issue in its motion, some of these yet-to-be identified class members may be current SVT employees, and SVT intends to conduct an internal investigation of its own employees regarding the subject matter of this lawsuit.

The Court finds that the EEOC has not made a showing of a heightened need for additional constraints on SVT, such as prior misconduct in this or other litigation, for example during the EEOC's two-year pre-suit investigation. Nor has the EEOC cited any authority that supports such additional restrictions beyond the requirements of Indiana Rules of Professional Conduct 4.2 and 4.3. *See Kuhl v. Guitar Ctr. Stores, Inc.*, 07 C 0214, 2008 WL 5244570 (N.D. Ill. Dec. 16, 2008) (rejecting the plaintiff's claim that the employee interviews were inherently misleading because the

---

[4] The EEOC requests that a protective order be entered requiring that, if SVT makes contact with any female applicant who it has rejected for hire since August 2011 and during times it hired male night crew stockers, SVT must immediately advise such individual (1) that SVT is the defendant in a hiring discrimination case brought by the EEOC; (2) the individual has the right to have her interests represented by the EEOC ; and (3) if the individual indicates that she wishes to have the EEOC represent her rights, cease all contact with the individual and promptly advise the EEOC of the contact. (Pl. Br. Docket entry 31, p. 6). The EEOC further requests that, if contact is made by SVT with any rejected female applicant but the individual advises that she has not yet decided whether to have the EEOC represent her interests through this lawsuit, SVT should be required to immediately identify the caller by name, who that caller represents, and the purpose of the call and that SVT should be required to advise any such potential class member about the existence of the lawsuit, the right of the individual to affirmatively request that the EEOC represent her interests, and that the participation in the call is not mandatory and she may opt to end the call.

proposed employer statement provided "only for the possibility of adverse interest" between defendant employer and the employees, rather than the actual conflict as alleged in the complaint, and finding that the clause in the statement informing each of defendant's employees that "[y]ou are a potential member of this class, and [as] such, your interests could be adverse to Guitar Center's interests" and other related provisions would adequately notify putative class members of the potential conflict); *see also Pruitt v. City of Chi., Dep't of Aviation*, 03 C 2877, 2004 WL 1146110, at *2 (N.D. Ill. May 20, 2004) (recognizing, in a Rule 23 class action, that generally a court issues "an order limiting discovery communications between parties and potential class members" only if such an order is warranted "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties" (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2001)), *aff'd sub nom. Pruitt v. City of Chicago, Illinois*, 472 F.3d 925 (7th Cir. 2006); *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 WL 22232907, at *3 (N.D. Ill. Sept. 16, 2003) (finding that, without a showing of actual harm, there must be some other evidence that justifies interfering with the defendant's communications with putative class members). Therefore, SVT may contact yet-to-be identified class members, subject to the applicable ethical rules.

Finally, the Court notes that, although this is not a Rule 23 class action nor a claim brought by the EEOC under Title VII based on a pattern or practice of discrimination, *see* 42 U.S.C. § 2000e-6, the principles regarding either party contacting putative class members in such cases are instructive in this Title VII discrimination case brought by the EEOC. Generally, in a class action, either side has the right to communicate with members of the putative class. *See Chartwell Fin. Servs.*, 204 F.3d at 759 (Rule 23 class action) (citing *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*,

102 F.3d 869, 870 (7th Cir. 1996) (§ 2000e-6 pattern and practice claim). In *Mitsubishi*, a case brought by the EEOC alleging a pattern and practice of discrimination, the court found that both sides can contact the potential class members to let them know their options, allowing the employees to decide for themselves with whom they will talk and about what subjects. *See Mitsubishi*, 102 F.3d at 870.

However, because there is the potential for abuse in class actions as well the right of class representatives and their counsel to communicate with potential class members,

> an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties . . . . In addition, such a weighing–identifying the potential abuses being addressed–should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf Oil v. Bernard*, 452 U.S. 89, 101-02 (1981); *see also Williams*, 204 F.3d at 759; *Reid v. Unilever U.S., Inc.*, 12 C 06058, 2013 WL 4050194, at *25 (N.D. Ill. Aug. 7, 2013). "The moving party bears the burden of establishing 'a specific record showing . . . the particular abuses by which it is threatened.'" *Reid*, 2013 WL 40450194, at *25 (quoting *Gulf Oil*, 452 U.S. at 102). Again, the EEOC has not made any such showing to support the requested protective order.

**B. Contact by the EEOC with Former and Current, Non-managerial SVT Employees**

The EEOC seeks a court order granting it permission to interview former employees and current, non-managerial employees of SVT outside the presence of SVT's counsel. Indiana Rule of Professional Conduct 4.2 bars contact with persons the lawyer knows to be represented by another lawyer in the matter. *See* Ind. R. Prof'l Conduct 4.2. However, in the case of corporate entities, Comment 7 to the rule distinguishes between current and former corporate employees:

In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. *Consent of the organization's lawyer is not required for communication with a former constituent*. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4

Ind. R. Prof'l Conduct 4.2, Comment 7 (emphasis added).

First, based on the plain language of Comment 7, Rule 4.2 permits the EEOC to engage in ex parte contact with SVT's former employees. *See Garcia v. Aartman Transp. Corp.*, 4:08cv77, 2010 WL 2427571, at *5 (N.D. Ind. June 4, 2010); *see also Craig v. Pepperidge Farm, Inc.*, 1:06cv954, 2011 WL 2357864, at *1 (S.D. Ind. June 10, 2011). Without citation to controlling law, SVT requests that the EEOC be required to disclose in advance any former SVT employees with whom it intends to engage in ex parte communication so that SVT may have the opportunity to raise any necessary objections.[5] The Court denies this request.

---

[5] In its opposition brief, SVT erroneously cites the summary of *other* cases by the court in *P.T. Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 735-36 (Ind. Ct. App. 2002), as that court's own holding, namely the court's discussion of *Lang v. Superior Court*, 826 P.2d 1228 (Ariz. Ct. App. 1992), *Continental Ins. Co. v. Superior Ct.*, 32 Cal. App. 4th 94, 37 (Cal. Ct. App. 1995); *Clark v. Beverly Health & Rehab. Servs., Inc.*, 2001 Mass. Super. LEXIS 289, NO. 990163B (Mass. Super. Ct. Jul. 5, 2001); *Notopoulos v. Hartford Hosp.*, 1996 Conn. Super. LEXIS 644, No. CV940544706 (Conn. Super. Mar. 12, 1996); and *NAACP v. State of Florida*, 122 F. Supp. 2d 1335 (M.D. Fla. 2000). *See* (Def. Resp. Br., docket entry 48, pp. 2-4).

However, SVT fails to acknowledge that, after reviewing all of these and other cases and despite the holdings of those cases and the court's concerns regarding the potential for inadvertent disclosure of attorney-client privileged information, the court in *P.T. Barnum* nevertheless held: "[W]e find no language in Rule 4.2 suggesting any limitations on contact with former employees. Recognizing the drawbacks of Rule 4.2 as applied in this situation, our supreme court with its rule-making authority may wish to revisit this issue. Until then, we hold that Rule 4.2 contains no limitations on the contacts an attorney may make with the former employee of an adverse party." 766 N.E.2d at 737.

SVT also fails to acknowledge that, subsequent to this case law, the Indiana Supreme Court's amendments to the Rules of Professional Conduct, effective January 1, 2005, added the following language to Comment 7 to Rule 4.2, as quoted and italicized above in the body of this Opinion: "Consent of the organization's lawyer is not required for communication with a former constituent." *See* Orders Amending Rules of Court 2004,

Second, the EEOC seeks to contact current, non-managerial SVT employees, including employees hired as overnight stockers and other employees who may have relevant background or anecdotal evidence regarding SVT's hiring of overnight stockers. SVT's position is that the EEOC's counsel as well as its agents should not be permitted to directly contact SVT's current employees at this stage of the litigation.

Comment 7 to Rule 4.2 prohibits communications with a current employee in only three circumstances: first, when the employee "supervises, directs or regularly consults with the organization's lawyer concerning the matter;" second, when the employee "has authority to obligate the organization with respect to the matter;" and third, when the employee's "act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Ind. R. Prof'l Conduct 4.2, Comment 7. In *Nichols v. Mishawaka Police Department*, the court found no violation of Rule 4.2 by an attorney who interviewed the corporate opponent's non-management employee ex parte, even when the employee was promoted to a management position shortly after the ex parte contact. No. 3:04-CV-245, 2005 WL 2031084, at *1-2 (N.D. Ind. Aug. 19, 2005).

The EEOC represents that none of the current, non-managerial SVT employees that it anticipates contacting ex parte fall into any of the three categories. SVT's stated primary concern is the third category, namely that a current, non-managerial employee engaging in ex parte communication with the EEOC may make a statement that may constitute an admission on the part of the corporation. First, SVT cites *Upjohn, Co. v. United States*, 449 U.S. 383 (1981). In *Upjohn*, the Supreme Court declined to "lay down a broad rule or series of rules" regarding the corporate

http://www.in.gov/judiciary/2787.htm (last visited Jan. 7, 2014).

attorney-client privilege. *Id*. at 386. Instead, the Supreme Court considered the facts of the case before it and held that communications considered "highly confidential" between corporate counsel and employees during the course of an internal investigation by the corporate counsel of an alleged kickback scheme were protected against compelled disclosure by the attorney-client privilege. *Id*. at 395. The ruling relied on the fact that the investigation concerned matters within the scope of the employees' corporate duties, the employees themselves were sufficiently aware that they were being questioned in order for the corporation to obtain legal advice, and the upper management did not have all the information required by corporate counsel to conduct the necessary investigation. *Id*. at 394.

In this case, there is no evidence that currently employed class members or currently employed potential class members carried out the alleged discriminatory actions on behalf of SVT. Nevertheless, lower-level employees, whether or not they were the subject of the alleged discrimination or whether they were involved with the alleged discriminatory acts, may, like the employees in *Upjohn*, have information regarding the alleged discrimination. That information may have been or may be the subject of communications with corporate counsel as a result of counsel representing SVT in this litigation, including information that may not have been known or be known by SVT's upper management. *See id*. at 394.[6]

---

[6] The Supreme Court in *Upjohn* reasoned:
Information, not available from upper-echelon management, was needed to supply a basis for legal advice concerning compliance with securities and tax laws, foreign laws, currency regulations, duties to shareholders, and potential litigation in each of these areas. The communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice.
*Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).

Thus, if SVT has conducted, or is conducting an internal investigation into the matters involving this case, *communications* between its employees and SVT's counsel likely would be protected from disclosure to the EEOC. *See Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2009) (recognizing the holding in *Upjohn* that "factual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege"). However, as held by the Supreme Court in *Upjohn*:

> Application of the attorney-client privilege to communications such as those involved here, however, puts the adversary in no worse position than if the communications had never taken place. The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.

449 U.S. at 395. Although the EEOC may not inquire into *communications* between employees and SVT counsel regarding the subject matter of this litigation, the EEOC may contact current, non-managerial employees regarding the underlying facts of the subject matter of this litigation, even if those employees previously communicated with SVT counsel. Moreover, the EEOC acknowledges that it is bound by the Indiana Rules of Professional Conduct and represents that it will abide by those obligations in any ex parte contacts with former as well as current, non-managerial SVT employees.

Next, SVT invokes Indiana Rule of Professional Conduct 7.3(b)(4). Rule 7.3 is titled "Direct Contact with Prospective Clients," and subpart (b)(4) provides: "A lawyer shall not solicit professional employment from a prospective client by in-person or by written, recorded, audio, video, or electronic communication, including the Internet if, . . . the solicitation concerns a specific matter and the lawyer knows, or reasonably should know, that the person to whom the solicitation is directed is represented by a lawyer in this matter." Ind. R. Prof'l Conduct 7.3(b)(4). However,

other than to the extent the attorney-client privilege applies to communications between employees and SVT corporate counsel under *Upjohn*, because the current, non-managerial employees are not represented by SVT corporate counsel, Rule 7.3(b)(4) is inapplicable, unless, of course, an employee has independently retained counsel.

SVT also cites generally page 2 of ABA Formal Opinion 07-445 for its statement that "counsel's right to contact punitive[sic] class members is subject to the limits of contacting prospective clients under [Rule 7.3]." (Def. Br., docket entry 48, p. 6). The Court agrees that Rule 7.3, as a whole, should guide the EEOC's contacts with potential class members as prospective clients, for the reasons set forth in the ABA Opinion:

> Both plaintiffs' counsel and defense counsel have legitimate need to reach out to potential class members regarding the facts that are the subject of the potential class action, including information that may be relevant to whether or not a class should be certified. With respect to such contacts, Rule 4.3, which concerns lawyers dealing with unrepresented persons, does not limit factual inquiries but requires both sides to refrain from giving legal advice other than advice to engage counsel, if warranted. If, on the other hand, plaintiffs' counsel's goal is to seek to represent the putative class member directly as a named party to the action or otherwise, the provisions of Rule 7.3, which governs lawyers' direct contact with prospective clients, applies. The fact that an action has been filed as a class action does not affect the policies underlying Rule 7.3 that prohibit the types of contact with prospective clients that have serious potential for overreaching and other abuse. However, Rule 7.3's restrictions do not apply to contacting potential class members as witnesses, so long as those contacts are appropriate and comport with the Model Rules.

ABA Formal Op. 07-445, 2.

Finally, SVT cites Indiana Rule of Professional Conduct 3.4(f), titled "Fairness to Opposing Party and Counsel," which provides that a lawyer shall not

> (f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
>> (1) the person is a relative or an employee or other agent of a client; and
>> (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

Ind. R. Prof'l Conduct 3.4(f). Comment 4 to Rule 3.4 provides, "Paragraph (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client." Ind. R. Prof'l Conduct 3.4, Comment 4. SVT contends that it should be permitted to instruct all employees, with the exception of those in the class, to refrain from voluntarily giving relevant information to the EEOC. Whether to invoke Rule 3.4(f) and provide instruction to SVT's employees under the rule is a consideration that must be weighed by counsel for SVT in light of the Rule 3.4(f)(2)'s caveat that counsel "reasonably believes that the person's interests will not be adversely affected by refraining from giving such information," especially in light of the possibility that some employees may fall within the class represented by the EEOC in this litigation.

Accordingly, the EEOC is permitted to make ex parte contact with former and current, non-managerial SVT employees regarding the subject matter of this litigation, subject to all applicable ethical rules, but excluding discovery of communications between current employees and counsel for SVT that are subject to the attorney-client privilege. The Court denies SVT's request for the "issuance of a protective order which outlines the procedure to be used by counsel relative to contact with witnesses while avoiding any alleged violation of ethic Rule 4.2."

## C. Limitations on Formal Written and Oral Discovery

SVT requests that the Court allow it to engage in reasonable formal discovery, including written discovery to and depositions of each of the identified and represented class members.

First, the EEOC does not object to SVT taking the depositions of the individual class members who have indicated that they wish to be represented by the EEOC and to participate in the class. Therefore, the Court grants SVT's request to conduct those depositions. *See EEOC v. DHL*

*Express (USA), Inc.*, No. 10 C 6139, 2012 WL 5381219, at *1-5 (N.D. Ill. Oct. 31, 2012) (allowing depositions of class members).

As to the number of depositions that may be taken by each party, the EEOC does not object to raising Federal Rule of Civil Procedure 30's presumptive limit from 10 to 30 depositions. The EEOC represents that it recognizes that due to the nature of the case and the number of aggrieved individuals involved, more than 10 depositions are warranted by both parties. In fact, the EEOC represents that it proposed to SVT to raise Rule 30's limit from 10 to 30 depositions, a proposal that SVT rejected. Thus, the EEOC proposes that a reasonable starting point is for the Court to set the limit at 30 depositions for each party with leave granted to both parties to file a motion with the Court should additional depositions be needed. The Court adopts this proposal.

Second, the EEOC objects to SVT's request to allow it to serve written discovery on each of the represented class members. Federal Rules of Civil Procedure 33, 34, and 36 permit the service of interrogatories, requests for production, and requests to admit, respectively, on *parties*. *See* Fed. R. Civ. P. 33, 34, 36. The class members are not parties, and SVT has not offered any legal basis allowing for the service of written discovery on nonparties under these rules. SVT's citation to *DHL Express* does not support the service of written discovery on class members as that case dealt with whether to allow depositions of class members.[7] To the extent SVT seeks written discovery from the identified class members, it may choose to avail itself of Federal Rule of Civil Procedure 45. To the extent SVT is suggesting that it may require additional interrogatories, requests for production,

---

[7] Although the court in *EEOC v. DHL Express* decided that "[t]he claimants are not nonparty witnesses, they are persons on whose behalf the EEOC is seeking relief for compensatory and punitive damages in their individual capacity," the court did so in the context of ruling on the defendant's motion to depose the class members. No. 10 C 6139, 2012 WL 5381219, at *2 (N.D. Ill. Oct. 31, 2012). As of the date of this Opinion, none of the individual class members has intervened in this case, and, thus, none is a party for purposes of discovery under Federal Rules of Civil Procedure 33, 34, or 36.

or requests to admit from the EEOC because of the number of class members in this case, that request is premature and not supported by the instant motion. After completing the discovery allowed by the Rules, SVT is granted leave to file a properly supported motion to seek additional discovery, if necessary.

To the extent that SVT is requesting a general order for "liberal formal discovery" without limitation, the request is unsubstantiated and is denied. *See Robinson Steel Co., Inc. v. Caterpillar, Inc.*, 2:10-CV-438, 2012 WL 5903769, at *1 (N.D. Ind. Nov. 21, 2012) (recognizing that the scope of discovery is not limitless). Other than the instant order expanding the number of depositions that may be taken by each side to 30, the scope of discovery is dictated by Federal Rule of Civil Procedure 26(b).

Finally, in closing paragraph "C" of SVT's Motion for Protective Order and Leave to Conduct Discovery filed at docket entry 36, SVT requests an order "[r]equiring the EEOC to produce, pursuant to discovery requests, all file materials, including but not limited to statements, of all class or potential class members prior to attorney-client representations." This request is not properly brought in the instant motion. At the time of the motion, SVT had not yet sought the discovery from the EEOC, representing in its brief that it "will likely seek, in a preliminary round of written discovery, for the production of the EEOC file with an itemization of any communications that have occurred between the EEOC and class members." (Docket entry 36, p. 6). Should SVT wish to renew this request, it may do so in a properly supported motion to compel pursuant to Federal Rule of Civil Procedure 37 after first attempting to obtain the information directly from the EEOC. Similarly, in SVT's response brief at docket entry 46, SVT contends that the EEOC improperly withheld telephone numbers from its initial disclosures. (Docket entry 46, p. 5). To the

extent SVT may be seeking relief from the Court regarding the telephone numbers, the request is not properly before the Court in the form of a motion.

## CONCLUSION

Based on the foregoing, the Court hereby (1) **GRANTS in part** and **DENIES in part** the EEOC's Motion for Protective Order Against Ex Parte Contact of EEOC Class Members [DE 30]; (2) **GRANTS** the EEOC's Motion for Order Allowing Ex Parte Contact with SVT's Former Employees and Current, Non-Managerial Employees [DE 33]; and (3) **GRANTS in part** and **DENIES in part** Defendant's Combined Motion for Protective Order to Govern Ex-Parte Communications by the Parties and Leave to Conduct Discovery [DE 35], subject to the following:

The Court **ORDERS** that SVT <u>may not</u> informally or ex parte contact Tiffany Swagerty or any of the identified class members who have communicated to the EEOC that they wish to be part of the class and be represented by the EEOC in this case.

The Court **ORDERS** that SVT <u>may</u> contact identified potential class members who have not yet indicated whether they wish to join the EEOC's class, individuals who have been identified as potential class members who have indicated that they do *not* wish to join the class, and yet-to-be-identified potential class members, guided by the Indiana Rules of Professional Conduct.

The Court **ORDERS** the EEOC, on or before **<u>January 20, 2014</u>**, to identify for SVT the 17 women who have agreed to be represented by the EEOC in this action (and any others who have joined the class since the briefing of these motions) as well as any individuals who have communicated that they do <u>not</u> wish to participate in the lawsuit or do not wish to be represented by the EEOC; the EEOC is further **ORDERED** to provide at least a weekly, or more often if

appropriate, update to SVT as to the addition or exclusion of additional individuals during the time period for discovery in this case.

The Court **ORDERS** that the EEOC <u>may</u> contact ex parte SVT's former employees and current, non-managerial employees subject to the restrictions of Comment 7 of Indiana Rule of Professional Conduct 4.2.

The Court **ORDERS** that SVT <u>may</u> take the deposition of each individual class participant, and **ORDERS** that each party may take 30 depositions. The parties are **GRANTED** leave to file a motion, after seeking concurrence by the opposing party, with the Court for an order allowing additional depositions, if necessary. Any such motion must demonstrate good cause for the request.

The Court **ORDERS** that SVT may <u>not</u> serve interrogatories, requests for production, or requests to admit under Federal Rules of Civil Procedure 33, 34, and 36, respectively, on the individual class members.

So ORDERED this 8th day of January, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record