UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO.: 2:13-CV-245-RLM-PRC ) |
| SVT, LLC d/b/a ULTRA FOODS, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court on the EEOC's Motion to Compel Agreed-Upon Format of SVT's Discovery Responses [DE 61] and the EEOC's Motion for Leave to File Documents Under Seal [DE 65], both filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") on February 20, 2014. Defendant SVT, LLC d/b/a Ultra Foods ("SVT") filed a response on March 17, 2014, and the EEOC filed a reply on April 2, 2014.

*1.    Legal Standard*

Federal Rule of Civil Procedure 34(b)(1)(C) provides that a party requesting production of electronically stored information ("ESI") "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). In addition, Rule 34 sets out procedures to be used for producing ESI:

> **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> **(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> **(iii)** A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E)(ii).

Federal Rule of Civil Procedure 26 provides for specific limitations on ESI:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

*2. Background*

In the Complaint, the EEOC alleges that SVT, a retail grocer, refused to hire a class of qualified applicants for available night stocker positions because of the applicants' sex (female) and disproportionately hired more males than females, despite receiving applications from qualified females during times that SVT filled available night stocker positions. SVT denies the allegations. The EEOC seeks backpay and prejudgment interest on behalf of the class.

In an August 20, 2013 written correspondence, the EEOC provided SVT with instructions for SVT's production of ESI, titled the "Concordance Load File Specifications," requesting that (1) documents be produced in near native .Tiff format and (2) spreadsheets and databases be produced in native format. Initially, SVT communicated that it could comply with these format requests. The EEOC served its First Request for Production on September 30, 2013, referencing the August 20, 2013 correspondence and the Concordance Load File Specifications. The EEOC's Request for Production sought applications, screening assessments, interview guides, spreadsheets containing data about applicants and employees, and pay rate information. The parties do not dispute that the ESI sought by the EEOC and at issue in this motion is relevant under Federal Rule of Civil Procedure 26.

On January 16, 2014, SVT began serving discovery responses. SVT produced spreadsheets in .Tiff format, which was not the native format. SVT produced employment applications in single-page, non-unitized .pdf and .Tiff format without a load file. In those responses, SVT averred that "[a]ll relevant data has been provided pursuant to industry standards." (Pl. Br., Ex. 3, Cert. ¶ 3). At no time prior to the production of documents on January 16, 2014, did SVT discuss with the EEOC any concerns with producing responsive information in the format designated by the EEOC in the August 20, 2013 correspondence and the Concordance Load File Specifications.

3.  *The EEOC's Concerns with the January 16, 2014 ESI Production*

The EEOC immediately identified problems with the format of SVT's ESI production as non-compliant with its August 20, 2013 communication and the Concordance Load File Specifications. Timothy Wojtusik, the EEOC's Litigation Support Manager, explains in his Declaration the deficiencies in SVT's ESI productions in native as well as non-native formats.

As for the documents produced in native format, Mr. Wojtusik identifies three deficiencies:

(1) SVT produced spreadsheet and/or database files, including ESI from Kronos and FMS, as printed images;

(2) SVT did not produce these files in the requested native format as specified by ¶ 8 of the agreed to Concordance Load File Specifications attached to the August 20, 2013 correspondence;

(3) in the format produced, the files are unusable because they cannot be searched or manipulated for analysis.

(Pl. Br., Wojtusik Decl.).

Wojtusik explains that the production of ESI in native format, such as spreadsheets and database data, is not unduly burdensome to the user as asserted by SVT. He represents that he is familiar with both the Kronos and FMS systems and knows that both are capable of providing users with data in many forms and come with built-in functionality to query, export, and report data from

databases. He further represents that it is relatively easy to export data from either vendor's systems. He states that it is not unduly burdensome for SVT to query its system for applicants, hires, applications, interview data, and payroll data maintained on these systems as ESI and to provide the data requested in its native format.

As for the documents produced by SVT in near-native format, Mr. Wojtusik explains that these documents, such as policies, handbooks, and contracts, were "bulk scanned" with no unitization or load files for any type of e-discovery system and in formats that do not meet the EEOC's production specifications in the August 20, 2013 correspondence. Mr. Wojtusik identifies several deficiencies with this "near-native" production:

(1) SVT produced single-page files in either .pdf or .Tiff format. The scans are not logically unitized, which the EEOC had advised it would not accept in the August 20, 2013 correspondence.

(2) SVT did not include a Concordance load file, which establishes the proper document breaks and maintains parent/child relationships, which was required in the August 20, 2013 correspondence.

(3) SVT's production stripped the ESI of the necessary document/page relationships and renders them unusable.

(4) The printed images and single page .pdf or .Tiff files are not ESI in the forms in which SVT ordinarily maintains such data and files. In fact, SVT converted the data to a less usable format than the original data.

*Id*.

The EEOC uses Concordance e-Discovery software, which is one of the industry standard platforms, for review of all discovery. Mr. Wojtusik explains that SVT has produced documents contained, in some instances, on DVD-Rs and, in other instances, in e-mail attachments on six separate occasions. Some of SVT's production consists of applications stored on SVT's third party vendor, Kronos, Inc.'s, system, which have been bulk-scanned to single page .pdf or .Tiff files with

no unitization or load files for any type of e-discovery system and in formats that do not meet the EEOC's production specifications set out in the August 20, 2013 correspondence. In other instances, the scanned documents appear to be image screen shots of data stored on SVT's third party vendor, Financial Management Systems, Inc.'s ("FMS"), systems.

*4.     Analysis*

The EEOC began communicating with SVT regarding its concerns with the ESI production on January 17, 2014. In one of the last communications, on February 10, 2014, the EEOC summarized its ongoing concern that "SVT's form of production is not reasonably usable because documents produced this way have been stripped of their necessary metadata and cannot be searched, sorted, filtered, or otherwise manipulated." (Exh. 24). The EEOC also stated that "[a] person would have to manually unitize the documents and create the load file, a process our IT professionals know from experience is not required for Kronos applications." *Id*. This issue remains the primary ongoing dispute. As for the EEOC's concern regarding spreadsheets produced in .Tiff format as opposed to native format, SVT has produced the spreadsheets in native format during the course of briefing this motion, satisfying the EEOC's concern.

First, pursuant to Rule 34(b)(1)(C), the EEOC is entitled to have SVT produce the data in the format specified, which is native format for spreadsheets and databases and near-native (.Tiff or .pdf) format for documents. *See* Fed. R. Civ. P. 34(b)(1)(C). SVT does not contest that .Tiff format "is a widely used and supported graphic file format for storing bit-mapped images, with many different compression formats and resolutions." *Race Tire America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 n.2 (3d Cir. 2012) (quoting The Sedona Conference, *The Sedona Conference Glossary, E-Discovery & Digital Information Management* 50 (Sherry B. Harris et al. eds., 3d ed. 2010)). A load file "indicates where individual pages or files belong together as

5

documents, to include attachments, and where each document begins and ends." *The Sedona Conference Glossary*, 31. Without load files, there is no way "to ensure transfer of accurate and usable images and data." *Id*.

SVT produced the .Tiff files requested by the EEOC *without* the load file, which the EEOC also requested. The EEOC contends that, without the load file, SVT's ESI production is not reasonably usable and continues to unnecessarily consume Commission resources and time spent attempting to make sense of SVT's discovery production. Also, the EEOC contends that SVT's production in .pdf format is not a reasonable alternative because the documents are bulk-scanned and not logically unitized. Moreover, .pdf format is neither the format in which SVT normally keeps these records nor the format designated by the EEOC.

The EEOC notes that two of SVT's designated human resources representatives, Jessica Hon and Rich Bugajski, testified during recent depositions about their experience working with Kronos. Hon testified that she can generate reports using Kronos in either Excel or .pdf format, including a report of applicants for night crew stocker positions at the facility at issue in this litigation. Bugajski testified that FMS can export reports to Excel. Both testified that Kronos users can sort applications by assessment score and can obtain additional internal Kronos data relevant to the hiring decision by hovering the mouse over the applicant's name. So, in one sense, the data is readily accessible for use. Yet, it is not clear to the Court how this information that is searchable by an end user can be produced by SVT in the searchable format sought by the EEOC. SVT states broadly and without evidentiary support that it does not have the necessary programs or equipment to comply with the EEOC's request to produce documents in near-native format.

Second, the EEOC argues that the documents are in the "control" of SVT within the meaning of Rule 34, even though the data is housed with Kronos and FMS, because SVT has a right to obtain

a copy of the documents. The Court agrees. *See United States v. Approximately $7,400 in U.S. Currency*, 274 F.R.D. 646, 647 (E.D. Wis. 2011) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." (quoting *Walls v. Paulson*, 250 F.R.D. 48, 50 (D.D.C. 2008) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995); *Kifle v. Parks & History Ass'n*, No. Civ. A. 98–00048, 1998 WL 1109117, at *1 (D.D.C. Oct. 15, 1998))).

SVT explains that, like many other retail grocers, it utilizes a third party hiring program tailored to its business that allows applicants to apply online for positions at its stores. The applicant enters his or her own application data, answers questions, and, in some cases, uploads documents into the Kronos system. The applicant can choose one or more positions that are, or may become, available at a particular store or stores. This data is then "stored" by Kronos. Designated "hiring personnel" from SVT can log into the Kronos system to view individual applications and associated materials. SVT represents that the applications can be printed by SVT in a .pdf formatted document for later use. SVT represents that the actual "raw data" is not accessible and savable by SVT but rather, that it can only obtain a .pdf document. SVT says that it can "sift" through information contained within the Kronos web-based program, such as initiating a search within certain time parameters (e.g. retrieving applications filed during the last 7 days or for a certain position).

The EEOC contends that SVT is able to use or manipulate the data in the Kronos databases not only to select applicants for interview and hire but also to produce reports by position and employee name, detailing past and future pay rates. In contrast, in a January 28, 2014 correspondence, counsel for SVT stated that "neither SVT nor our office has the ability to convert large scale documents from the medium they are kept in the normal course of business, and/or has

been provided by third parties, without undue burden or expense." (Exh. 15). Counsel for SVT went on to request: "To the extent that you have information that you or members of your staff have that would change the situation, please send me something in writing." *Id*. On January 29, 2014, counsel for SVT wrote that, although it had agreed to produce ESI in the format requested by the EEOC in the August 20, 2013 letter, "the scope of the EEOC's request, not known at the time the parties met to coordinate ESI production, cannot be met in the format that the EEOC has requested." (Ex. 17). This is at odds with the statements of Mr. Wojtusik regarding the accessibility of the data.

Third, SVT argues that this ESI is not "reasonably accessible because of undue burden or cost," arguing that the EEOC knew that SVT could not produce data in the form sought by the EEOC without seeking, and paying, for the data from third parties. The Court finds that SVT has not met its burden under Rule 26(b)(2)(B) of showing that the records are not reasonably accessible. SVT argues that it has already expended significant resources providing ESI to the EEOC and will incur additional costs if ordered to produce the ESI in the specified format. SVT represents that it produced much of this information to the EEOC in 2011 during the EEOC's pre-suit investigation, consisting of approximately 1600 applications in .pdf readable files. SVT states that the first round of applications resulted in a $2,400.00 charge to SVT from Kronos. SVT also represents that the EEOC's subsequent discovery requests during this litigation for data that is hosted and maintained by Kronos resulted in charges of $400 and $6,000 in January 2014 to retrieve the expanded application data requested. SVT says that Kronos advised SVT on March 13, 2014, that the additional data extraction that would be responsive to the EEOC's request for production subject to this motion to compel would require 117 hours of time at a cost of $23,900.00. Finally, SVT represents that it was invoiced $8,175 for "EEOC Lawsuit Reporting" from FMS for 54 hours of work to provide data in the "CVS" format.

Although SVT has incurred costs in responding to this discovery request and may expend additional resources to comply with the EEOC's discovery request, SVT erred by not objecting or seeking a protective order in advance of its January 16, 2014 production based on its purported inability to comply with the EEOC's ESI specifications. "A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form." Fed. R. Civ. P. 34 (2006 advisory committee notes). The EEOC specified the format for ESI in the August 20, 2013 communication. At the parties' planning conference, SVT's IT professional indicated that SVT could provide discovery in the EEOC's designated format. Although SVT reserved its right to object when submitting the parties' joint planning report, SVT chose to make its objections after producing the documents in a format other than that designated by the EEOC. SVT offers no explanation for this delay. Notably, on three occasions, SVT requested extensions of time to respond to the discovery requests and never indicated its intent to object. If SVT had made its objections in a timely manner, the parties either could have resolved this dispute or sought the assistance of the Court in advance of SVT's production.

The EEOC cites case law suggesting that conversion of ESI to the .Tiff format designated by the Commissioner does not exceed standard copying rates. *See Race Tire America*, 674 F.3d at 162, 167 (noting that the party incurred an approximate per-page cost of $.05 to scan 430,733 pages of documents and convert them to .Tiff format); *Nobel Biocare USA, LLC v. Technique D'Usinage Sinlab, Inc.*, No. 1:12-cv-730, 2013 WL 819911, at *5 (E.D. Va. Mar. 4, 2013) (paying approximately $.07 per page for "TIFF productions" and "Native productions").

Based on the evidence and argument before the Court, the data is not inaccessible due to undue burden or cost. Therefore, the Court need not address SVT's argument that the EEOC should bear some or all of the cost of production of ESI from its third-party vendors. *See Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (noting that cost-shifting is only potentially appropriate when inaccessible data is sought).

In sum, the EEOC properly specified the form for producing ESI in its August 20, 2013 communication and Concordance Load File Specifications. The evidence before the Court supports a finding that SVT should produce responsive ESI information in the format initially designated by the EEOC so that the information is reasonably usable, i.e., fully searchable and manipulable, with the connections between data fields intact. However, despite the extensive briefing and submissions of exhibits, a precise resolution to this conflict is not readily apparent, and the parties are ordered, as set forth in the next section to attempt to resolve this conflict through an in-person meet and confer.

5.  *Court-ordered Meet and Confer*

To date, all of the parties' efforts to resolve this dispute have been in writing. There was no face-to-face conference with IT support staff, and there was no exchange of technical documents between parties' IT support staff. Through the attorneys' written correspondence, SVT asked the EEOC for alternatives and/or written information that would assist SVT in addressing this dispute. SVT sought information on how to obtain the data from its third-party vendors in a form acceptable to the EEOC without incurring more cost and how to deliver the materials in the Concordance load file format when SVT did not have the capability to do so, either by possession of software or experienced personnel. In response, the EEOC insisted on an in-person meeting without additional written documentation from its IT personnel and based solely on the August 20, 2013

communication. The Court finds that, subsequent to the January 16, 2014 production, the EEOC was not reasonable in its refusal to provide the requested specific written communication by its IT personnel to SVT in advance of an in-person meet and confer. With the guidance of the Court's findings in this Opinion, the parties can likely resolve this dispute without further Court involvement if the EEOC first provides SVT with specific written instructions from its IT personnel and the parties then engage in an in-person meet and confer with the attorneys for both parties, the IT personnel for both parties, and personnel from the third party vendors, if necessary.

The Court is mindful of the apparent inequality of resources available to the parties in this case, the excessive costs that can be incurred in producing ESI, and that such costs can become so burdensome as to pressure a party to settle in order to avoid those costs. In ordering the EEOC to provide written instructions from its IT personnel and by requiring the parties to engage in an in-person meet and confer with the IT personnel present, the Court is not shifting the dollar cost of production to the EEOC, yet the Court expects the EEOC to be mindful of these cost considerations and to assist SVT, through the assistance of the EEOC's IT personnel, in finding a cost-effective resolution to this conflict. Broad statements made by Mr. Wojtusik in his Affidavit regarding the production of non-native ESI in .Tiff format as a "straightforward process" that "is in no way burdensome to the user" suggests that Mr. Wojtusik is uniquely qualified to provide this technical direction to SVT, its IT staff, and its attorneys.

SVT represents that it has already produced much of the requested ESI during the course of the EEOC's pre-suit investigation. In its reply brief, the EEOC contends that information obtained during the EEOC's investigation was not certified by counsel as required of discovery responses by Federal Rule of Civil Procedure 26(g), and SVT is under no obligation to supplement its investigation-stage responses. The EEOC thus contends that the requested discovery is neither

cumulative nor duplicative of prior discovery. Nevertheless, in light of the considerations in this specific litigation, at the meet and confer, the parties shall determine whether they can agree upon a way for the ESI produced by SVT during the EEOC's investigation to constitute a response to the pending discovery request.

SVT offered to make a computer terminal connected to the Kronos system available to the EEOC for the EEOC to run searches with the parameters it seeks. The EEOC rejects this offer as inadequate because the EEOC would incur travel costs to get appropriate personnel to SVT's computer and because, without coordination with Kronos and SVT, the Commission has no assurance that it would obtain the data it seeks in the format designated. In contrast, SVT suggests that this access would allow the EEOC to examine and review all applications, uploaded documents, and hiring statuses, and, additionally, would allow the EEOC to run its own reports. At the meet and confer, the parties shall consider whether this offer by SVT should be part of the parties' resolution of the instant conflict if the necessary coordination can be arranged.

Finally, the EEOC asks the Court for leave to file under seal Exhibits 4, 5, and 6, which are a native-format spreadsheet produced as a printed image, a document showing how SVT can manipulate application data, and an example of documents showing that SVT can search for and manipulate payroll data, respectively. The EEOC submitted these documents under seal pursuant to the parties' Stipulated Protective Order. Having reviewed the documents, the Court finds that, because the documents contain sensitive personnel information of non-parties, the legal and factual criteria for maintaining the documents under seal are met.

Based on the foregoing, the Court **GRANTS** the EEOC's Motion for Leave to File Documents Under Seal [DE 65], **TAKES UNDER ADVISEMENT** the EEOC's Motion to Compel Agreed-Upon Format of SVT's Discovery Responses [DE 61], and **ORDERS**:

(1) the EEOC to provide SVT on or before **April 24, 2014**, with a *written* communication from the EEOC's internal forensic computer expert, Mr. Wojtusik or another similarly qualified individual, setting forth the remaining specific deficiencies with SVT's January 16, 2014 ESI production and proposing a specific and detailed explanation of the method for obtaining and delivering the information in a cost-efficient manner for SVT;

(2) the EEOC and SVT to meet and confer in person, on or before **May 9, 2014**, with their respective IT personnel as well as personnel from third party vendors Kronos and FMS, if necessary, to resolve this conflict, which includes considering the written communication that will be produced by the EEOC's internal forensic computer expert, considering whether the prior production of ESI in the course of the EEOC's pre-suit investigation with the proper attorney certification could satisfy portions of the instant discovery dispute, and considering whether making a computer terminal available for the EEOC to conduct its own searches is a viable option; and

(3) the parties to file a joint status report on or before **May 16, 2014**, indicating the date and location of the meet and confer, listing who was present at the meet and confer, attaching as an exhibit a copy of the written communication from the EEOC's internal forensic computer expert, and summarizing the results of the meet and confer, including whether the instant Motion to Compel can be denied as moot by the Court and, if not, detailing the issues discussed and the basis for not resolving the dispute.

So ORDERED this 10th day of April, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record