**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY ) <br> COMMISSION, ) <br> Plaintiff, ) <br> ) <br> v. ) CAUSE NO.: 2:13-CV-245-RLM-PRC <br> ) <br> SVT, LLC d/b/a ULTRA FOODS, ) <br> Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on the EEOC's Motion to Compel Agreed-Upon Format of SVT's Discovery Responses [DE 61], filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") on February 20, 2014. Defendant SVT, LLC d/b/a Ultra Foods ("SVT") filed a response on March 17, 2014, and the EEOC filed a reply on April 2, 2014. On April 10, 2014, the Court issued an Opinion and Order, taking the motion under advisement and ordering the parties to meet several court-ordered deadlines to attempt to resolve this discovery dispute about electronically stored information ("ESI") without further Court intervention. On May 16, 2014, the parties filed a Joint Status Report [DE 74], ordered by the Court, detailing the parties' compliance with the deadlines, each party's view of the result of their efforts, and each party's request for a further interim order by the Court.

Through their significant efforts and cooperation, the parties were able to resolve most of their disputes. For the sake of efficiency, the Court does not restate the parties' efforts reported in the Joint Status Report. Having considered the parties' summaries and proposals, the Court provides the parties with additional guidance and deadlines to allow them to attempt to fully resolve the pending motion.

*1.    Legal Standard and Relevant Subsequent Background*

Federal Rule of Civil Procedure 34(b)(1)(C) provides that a party requesting production of ESI "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). In addition, Rule 34 sets out procedures to be used for producing ESI:

> **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> **(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> **(iii)** A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E)(ii).

> Federal Rule of Civil Procedure 26 provides for specific limitations on ESI:
>
> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

In the April 10, 2014 Opinion and Order, the Court ordered the EEOC to provide SVT with a written communication from the EEOC's internal forensic computer expert, Mr. Wojtusik or another similarly qualified individual, setting forth the remaining specific deficiencies with SVT's January 16, 2014 ESI production and proposing a specific and detailed explanation of the method for obtaining and delivering the information in a cost-efficient manner for SVT.

On April 24, 2014, Mr. Wojtusik timely tendered the letter to SVT's counsel. Mr. Wojtusik identified three remaining categories of data: (1) near-native format for scanned paper documents

2

and loose files; (2) native format spreadsheets and databases; and (3) SVT data held by third-party Kronos.

At Mr. Wojtusik's recommendation, SVT retained an e-discovery vendor, D4 eDiscovery LLC ("D4"), to assist SVT with its discovery compliance.

The parties held the ordered in-person meet and confer on May 8, 2014. Since that time, SVT, through D4, provided additional information about the previously provided data held by third-party FMS and additional information about SVT's data held by Kronos.

*2.  Near-Native Format Production and Native Format Spreadsheets*

The parties report that SVT will be able to deliver the .Tiff format production according to the EEOC's designation by May 28, 2014. The parties report that SVT has already produced several spreadsheets, including a missing spreadsheet. The EEOC noted some discrepancies between the now-produced missing spreadsheet that was produced on May 15, 2014, and a prior version of that spreadsheet produced during the EEOC's investigation. The EEOC represents that it anticipates being able to revolve the discrepancies informally with SVT.

As for the native format spreadsheets regarding the data held by third-party FMS, SVT produced spreadsheets in native, Excel format. However, the production did not include an identification of column titles and their meanings and any codes or abbreviations. On May 14, 2014, SVT delivered data dictionaries to the EEOC. The origin of the data dictionary is unknown to the EEOC, and SVT reported that the dictionaries are the only such documentation in its possession. SVT has agreed to obtain information in response to the EEOC's request for additional information about the spreadsheet production. The EEOC reports that, despite two productions of information by SVT, additional information will be required. The EEOC believes that the information will need

3

to be sought from FMS, and the EEOC believes that FMS is a necessary party. In contrast, SVT believes that, unless the EEOC identifies further concerns, this issue has been resolved.

To allow SVT and D4 sufficient time to complete the production of near-native data by May 28, 2014, for the EEOC to evaluate that production, for the EEOC to informally resolve the discrepancies related to the previously missing spreadsheet, and for the EEOC to obtain from SVT (perhaps with FMS's assistance) the necessary information to use the FMS Excel spreadsheets, the Court orders the parties to file a Supplemental Status Report regarding the status of these discovery issues on or before **June 26, 2014**.

3. *The April 24, 2014 Letter from Mr. Wojtusik*

In its portion of the Joint Status Report, SVT contends that Mr. Wojtusik's communication did not provide a "detailed explanation of the method for obtaining and delivering the information in a cost-efficient manner for SVT" as required by the Court's Opinion and Order. Having reviewed Mr. Wojtusik's letter, the Court finds that he satisfied the requirements of the Court's Order. The Court declines to order Mr. Wojtusik to produce a supplemental correspondence.

4. *Data Stored by Kronos*

Early in this discovery conflict, the EEOC identified perceived deficiencies with SVT's production of data held by Kronos. In the original briefing on the pending motion, SVT explained that, like many other retail grocers, it utilizes Kronos, a third party hiring program tailored to its business that allows applicants to apply online for positions at its stores. The applicant enters his or her own application data, answers questions, and, in some cases, uploads documents into the Kronos system. The applicant can choose one or more positions that are, or may become, available at a particular store or stores. This data is then "stored" by Kronos. Designated "hiring personnel" from SVT can log into the Kronos system to view individual applications and associated materials. SVT

4

represented that the applications can be printed by SVT in a .pdf formatted document for later use. SVT represented that the actual "raw data" is not accessible and savable by SVT but rather, that it can only obtain a .pdf document. SVT stated that it can "sift" through information contained within the Kronos web-based program, such as initiating a search within certain time parameters (e.g. retrieving applications filed during the last 7 days or for a certain position).

In its portion of the Joint Status Report, SVT further explains that Kronos is an independent service provider to SVT, that SVT does not control Kronos employees or its business model, and that SVT does not have unfettered access to the Kronos databases that contain the data. SVT represents that Kronos does not allow its customers direct access to stored data and provides customers with only a limited range of query and reporting capability. SVT further explains that the data, as kept in the ordinary course of SVT's business and viewed through SVT's limited views and reports, looks very different from how it is stored in Kronos' proprietary format.

In an attempt to resolve this dispute, Kronos prepared, at SVT's request, an engineering estimate of $23,500 to prepare a customized program and report tailored specifically to meet the EEOC's request. A summary of that proposal was filed at docket entry 69-1, Exhibit A, on March 17, 2014. Subsequently, SVT provided the EEOC with more information about the proposal on May 14, 2014. Kronos indicates that, to provide the tailored report, it will be required to piece together information from twenty-four separate data tables, decrypt personal information from three tables containing that information, and build three separate temporary databases.

SVT argues that this compilation of data by Kronos is not how the data is kept in SVT's ordinary course of business. In its portion of the Joint Status Report, the EEOC acknowledges that Kristel Pischner, the HR administrative representative to whom SVT delegated the task of running the Kronos reports in response to the EEOC's discovery requests, explained that she did not contact

5

Kronos to find out from Kronos whether the reporting function to which SVT currently has access can produce the data requested by the EEOC in a format acceptable to the EEOC. Pischner stated to the EEOC that she never had a conversation with Kronos because she did not need the information. Pischner stated that the reports she runs were set up for her by Kronos–that is, they are custom reports specific to SVT.

In its briefing on the original motion, the EEOC noted that two of SVT's designated human resources representatives, Jessica Hon and Rich Bugajski, testified during depositions about their experience working with Kronos. Hon testified that she can generate reports using Kronos in either Excel or .pdf format, including a report of applicants for night crew stocker positions at the facility at issue in this litigation. Bugajski testified that FMS can export reports to Excel. Both testified that Kronos users can sort applications by assessment score and can obtain additional internal Kronos data relevant to the hiring decision by hovering the mouse over the applicant's name. It would seem that any hiring decisions made by SVT, which is the crux of this lawsuit, would have been based on SVT's use of these reports that are made available to SVT from Kronos under the existing contract between SVT and Kronos.

During the May 8, 2014 conference, D4 proposed that SVT determine which data stored with Kronos can be obtained through these reporting capabilities without requesting additional access from Kronos at an additional cost beyond SVT's normal contract with Kronos. On May 14, 2014, SVT submitted correspondence to the EEOC identifying the reports it can produce without relying on Kronos. The EEOC represents in the Joint Status Report that it is not confident that the "limited information" provided by SVT on May 14, 2014, about SVT's custom reporting capability is sufficient to allow the EEOC to select the reports it needs. The EEOC states that, without additional information, the EEOC is not in a position to determine whether SVT can satisfy its discovery

obligations without relying on Kronos. The EEOC views Kronos as a necessary party. The EEOC represents that it will review what it has received and attempt to confer with SVT.

In the April 10, 2014 Opinion and Order, the Court found that the documents the EEOC sought were within the "control" of SVT, even though the data is housed with Kronos because SVT has a right to obtain a copy of the documents. *See United States v. Approximately $7,400 in U.S. Currency*, 274 F.R.D. 646, 647 (E.D. Wis. 2011) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." (quoting *Walls v. Paulson*, 250 F.R.D. 48, 50 (D.D.C. 2008) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995); *Kifle v. Parks & History Ass'n*, No. Civ. A. 98–00048, 1998 WL 1109117, at *1 (D.D.C. Oct. 15, 1998))). In that Opinion and Order, the Court also held that SVT had not met its burden of showing that the ESI requested by the EEOC and stored by Kronos is not "reasonably accessible because of undue burden or cost," under Rule 26(b)(2)(B).

The Court now finds, that with the additional information provided in the Joint Status Report: (1) the data stored by Kronos that SVT can produce through the custom reports already available to it through its contract with Kronos is reasonably accessible, and must be produced in the EEOC's designated format; (2) data housed by Kronos in forms or reports that are not already available to SVT through the custom reports that Kronos set up for it is not reasonably accessible to SVT because of both undue burden and cost.

Because the EEOC represents that it may not have sufficient information to determine which reports SVT must run from the reporting capability it already has, the Court orders SVT, with the assistance of D4 if appropriate, to confer with the EEOC to identify any missing preliminary information that the EEOC may require in order to identify the reports and formats that SVT will

7

run from the Kronos system within the reporting capability that SVT already has in order to respond to the EEOC's discovery request. This conference shall occur on or before **May 30, 2014**.

On or before **June 6, 2014**, the EEOC, with the assistance of Mr. Wojtusik or another qualified IT professional, shall identify for SVT and D4 the reports and formats that the EEOC requests from SVT's current reporting capability.

SVT shall then produce that discovery to the EEOC, in the EEOC's designated format with the assistance of D4, if appropriate, on or before **June 20, 2014**.

The parties shall report on the conference and the status of the discovery production in the Supplemental Joint Status Report due on **June 26, 2014**.

The Court denies the EEOC's request to order a representative from Kronos or FMS to participate in the conference.

Having found that customized reports of the data housed with Kronos in forms other than those that SVT can produce through its reporting capability are not reasonably accessible because of undue cost or burden, the Court orders that, if the EEOC wishes to obtain that data from Kronos directly, the EEOC must bear all the cost of such production. *See Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (noting that cost-shifting is only potentially appropriate when inaccessible data is sought); Fed. R. Civ. P. 26(b)(2)(B) (discovery of ESI may be limited when a party can show the sources of ESI are "not reasonably accessible because of undue burden or cost"). Federal Rule of Civil Procedure 26(b)(2)(C)(iii) requires courts to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Courts consider eight factors when addressing how to allocate the costs associated with ESI:

> 1) the likelihood of discovering critical information; 2) the availability of such information from other sources; 3) the amount in controversy as compared to the total cost of production; 4) the parties' resources as compared to the total cost of production; 5) the relative ability of each party to control costs and its incentive to do so; 6) the importance of the issues at stake in the litigation; 7) the importance of the requested discovery in resolving the issues at stake in the litigation; and 8) the relative benefits to the parties of obtaining the information.

*Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, 2:07-CV-3, 2014 WL 1094455, at *13 (N.D. Ind. Mar. 19, 2014) (citing *First Fin. Bank, N.A. v. Bauknecht*, 2013 WL 3833039, at *2 (C.D. Ill. July 23, 2013); *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, 2009 WL 3347101, at *3 (E.D. Wis. Oct. 15, 2009); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573 (N.D. Ill. 2004)). In the original briefing on the motion, SVT did not identify these factors but did argue for cost-shifting. In its reply brief, the EEOC identified and addressed each of the factors. The Court considers each factor and finds that they weigh in favor of cost-shifting as to any reports to be produced directly from Kronos (currently with an estimated cost of $23,500).

To the extent that the EEOC wants Kronos to produce the data it stores in reporting formats different than those used by or even available to SVT in the ordinary course of its business, the likelihood of discovering critical information is low because SVT's hiring decisions likely were based on the information it obtained from the reports it had the capability of running. SVT has continued to provide documents as they are kept in the usual course of business and will do so pursuant to this Order in relation to the reports it can run from Kronos. SVT contends that the EEOC has not shown that it requires the data to be produced in this alternative format but has only demonstrated that it wants the data in the alternative formats. The EEOC argues that payroll data will be critical to assess any damages owing. But, the EEOC has not shown that the data produced by SVT from the reports that it already has the capability to run will not satisfy the need for all

relevant information, even that information not directly considered in hiring decisions. This factor weighs heavily in favor of shifting the cost burden to the EEOC.

This information, in the *form* of a customized program and report, does not appear to be available from other sources. However, the data itself is available through SVT's current reporting capability. This factor weighs in favor of shifting expenses.

The amount in controversy as compared to the total cost of production weighs against shifting costs. At the time SVT filed its response brief, 33 women had been identified as potential class members, the class stood at 23 persons, and two males had been dropped as potential class members. The EEOC is seeking backpay and prejudgment interest on behalf of the class. The cost of this additional discovery directly from Kronos is approximately $23,500. The EEOC notes that, in addition to backpay, the EEOC is seeking compensatory and punitive damages, and, considering SVT's size, the jury may award $300,000 per claimant under the statute. Therefore, the amount in controversy exceeds the cost of production.

In comparing the parties' resources as compared to the total cost of production, the Court notes that, as set forth in the April 10, 2014 Opinion and Order, SVT has already expended significant resources and continues to expend significant resources to comply with the EEOC's discovery request. SVT hired D4 at a rate of over $250 per hour. In light of the small likelihood that the additional discovery sought directly from Kronos of the same data in a different format is going to produce useful information, this factor weighs in favor of shifting the cost.

As to the relative ability of each party to control costs and its incentive to do so, SVT has no ability to control the cost of data requested directly from Kronos in reports or formats that are not available to SVT under its contract with Kronos. This factor weighs in favor of shifting the cost.

As with the first issue, it appears that the data compiled in new ways by Kronos will not be very important to the issues at stake in the litigation nor will the requested discovery be very important in *resolving* the issues at stake in the litigation because SVT's decisions would not have been made on compilations of data in formats that it did not have access to and because it appears that SVT can produce the same data, just organized differently. Although the information that SVT will produce from the Kronos reports that it can run will be both important to the issues at stake and to resolving the issues at stake, the EEOC has not shown how the additional information sought directly from Kronos will be important in these ways. Payroll information should be able to be obtained from SVT directly. For the same reasons, the relative benefit to the EEOC of obtaining the information formatted differently from Kronos directly is low. These factors all weigh in favor of shifting the cost to the EEOC.

Therefore, if the EEOC wishes to obtain the data directly from Kronos as a customized program and report tailored specifically to the EEOC's discovery request at the estimated cost of $23,500, the EEOC will have to pay the cost for the discovery.

## CONCLUSION

Based on the foregoing, the Court **MAINTAINS UNDER ADVISEMENT** the EEOC's Motion to Compel Agreed-Upon Format of SVT's Discovery Responses [DE 61], and **ORDERS** the parties to comply with the deadlines set forth in this Opinion and Order.

So ORDERED this 22nd day of May, 2014.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc:  All counsel of record