# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | ) | |
| COMMISSION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-245-RLM-PRC |
| | ) | |
| SVT, LLC d/b/a ULTRA FOODS, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the EEOC's Motion to Compel SVT's Complete Responses to Written Discovery [DE 86], filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") on October 27, 2014. Defendant SVT, LLC d/b/a Ultra Foods ("SVT") filed a response on November 10, 2014, and the EEOC filed a reply on November 24, 2014.

This matter is also before the Court on Defendant's Motion for Leave to File Additional Response to EEOC's Motion to Compel [DE 94], filed on December 9, 2014, to which Plaintiff EEOC filed a response on December 10, 2014. The motion is denied. Any new arguments by the EEOC in the reply brief not raised in the opening brief and/or based on evidence not available to SVT at the time of its response brief (such as depositions taken after the response brief was filed) will not be considered by the Court on this motion.

## BACKGROUND

SVT allegedly rejected Tiffany Swagerty for a night crew stocker position at its Merrillville, Indiana Ultra Foods store ("Store 8781") after she applied in February 2010.[1] Subsequently, perhaps in April 2010, Swagerty had a telephone conversation with SVT's hiring manager Timothy Farley,

---

[1] In its response brief, SVT offers its take on the meaning of the evidence and the validity of the lawsuit. However, SVT does not cite any evidence in support of these assertions, and, thus, the Court does not consider them in the instant ruling.

who told her women that were not usually hired for night positions. Hearing nothing further from the store, Swagerty complained to the EEOC in November 2010. This led to an investigation by the EEOC of Store 8781's hiring practices, which the EEOC represents corroborated the allegation that despite sufficient female applicants, SVT overwhelmingly hired male applicants for its night crew stocker position. Finding probable cause for a Title VII violation, the EEOC filed this Title VII lawsuit seeking injunctive relief and, on behalf of Swagerty and other similarly rejected female applicants, monetary damages.

On September 30, 2013, the EEOC served SVT with written interrogatories and requests for production of documents, seeking information about other night crew stocker applicants; SVT's motive, intent, and plan with respect to hiring; information about hiring and those involved in hiring; the discovery of potential witnesses who may have relevant information about the same; night crew stocker job duties; training materials; other complaints of gender discrimination; SVT's financial health; and night crew stocker hiring in SVT's other Northern Indiana stores. For those interrogatories and requests lacking a more specifically stated temporal scope, the EEOC instructed generally that the temporal scope was January 1, 2009, to the present.

SVT obtained three extensions of time to respond to these discovery requests. SVT then responded to the EEOC's first set of written discovery, which the EEOC describes as making only partial disclosures or production along with objections. The EEOC represents that attempts to resolve SVT's objections to these requests were fruitless and the parties reached an impasse on (1) personnel and hiring records, (2) background, "me-too" evidence, (3) SVT's financial health records related to punitive damages, (4) Night Crew Stocker job duties/minimum qualification records, and (5) four pages of notes taken by SVT then-Human Resources Director Jessica Hon at the direction

of SVT counsel during the EEOC's pre-suit investigation interview of hiring manager Timothy Farley.

## ANALYSIS

The scope of discovery is governed by Federal Rule of Civil Procedure 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). A motion to compel is properly denied when the information sought is not relevant to a plaintiff's claims. *Griffin v. City of Milwaukee*, 74 F.3d 824, 829 (7th Cir. 1996). District Courts are afforded broad discretion in matters of compelling discovery. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013).

In the instant motion, the EEOC seeks to compel complete discovery responses to the EEOC's first and second written discovery requests, which seek information relevant to the EEOC's Title VII gender discrimination hiring lawsuit and SVT's defenses to the same. Specifically, the EEOC asks that the Court order SVT to fully, completely, and for the time period specified respond to the EEOC's first written Interrogatories Nos. 6, 10, and 12, Requests for Production Nos. 4-7, 9-10, 12-14, and 19-20, and Second Request for Production No. 3.[2]

As an initial matter, the EEOC premises those portions of its motion in which it seeks to expand discovery beyond Store 8781 to all of SVT's Northen Indiana stores on an assertion that a

---

[2] Although the EEOC also includes Requests for Production Nos. 11 and 18 as subject to the Motion to Compel, the EEOC does not cite or discuss either request in its brief.

vice president, a director, and managers of SVT have either testified or insinuated that "hiring practices" at SVT's Store 8781 were the same as other SVT stores in Northern Indiana and consistent with some industry norm related to the gender of night crew stockers. Although this testimony indicates that more applications by males than females were received for the night stocker positions and that, generally, the hiring practices were consistent within the industry, the testimony does not connect consistency with industry standards in hiring to the gender of the night crew stocker applicants.

On page 4 of its brief, the EEOC represents that "SVT's Human Resources Vice President and Human Resources director testified during their March 2014 depositions that hiring for Store 8781 was the 'same' as any other store with respect to gender of night crew stockers." (Pl. Br. 4). However, a review of the cited deposition testimony reveals that the testimony discussed the consistency of the *applicant* pool (mostly men applied for the night stocker positions) and not of the hiring practices. In the cited pages of his deposition, Vice President Rex Mudge answered "yes" when asked if, in his opinion, the number of females hired for night crew stocker positions at Store 8781 is sufficient. He explained,

> Again, you know, women on night crew, I mean, if you look at the industry, they're not–it's just not a position that's real attractive. And, again, our system cannot capture this either, but you know, that's not a position that–it's very physical. There's not a lot of interaction. It's all production.

> People within our system–especially this particular store, 8781, through the union process and through the union grievance, they have the ability, if they want, to elect to go to night crew. And to date, no one has ever asked. No one has ever lodged a complaint. Nobody has ever asked through the union grievance procedure if they can, on the next opportunity, go to night crew.

> It's just the way it is with 8781. The union contract, they're all clerks. They have the ability, based on seniority and based on time within the company, to migrate to

whatever positions they ultimately want. So, there's never been a complaint, never been an issue, and there has certainly been opportunities.

(Pl. Br., Exh. 12, pp. 232-33).

As for SVT Human Resource Manager Rich Bugajski, the EEOC cites the following portion

of his deposition testimony:

> Q.  And if I told you the records that SVT, LLC, has produced to the EEOC today show 55 male hirers[sic] at that store in that time period, do you have any information or any facts that would dispute that?
> A.  No, not to my knowledge.
> Q.  Do you believe the number–do you personally–do you believe the number of females hired at 8781 for night stocking is adequate?
> Mr. Long: I'm going to object on foundation and form. It's asking the witness for a personal opinion, but based upon the facts. You can answer the question.
> By the Witness:
> A.  And it was the three?
> Q.  Yes.
> A.  Since 2010?
> Q.  Yes.
> A.  Based off my personal experience in those roles and knowing the applications that you'd see, not very many females would apply, so it was heavily saturated with male applicants. So does it surprise me? Not tremendously.

(Pl. Br., Ex. 13, p. 202 at ll. 13-25, p. 203 at ll. 1-11). The EEOC also cites his deposition testimony

on page 271:

> A.  Working inside of the store and seeing the applicants that would apply for night crew, it was heavily male. Not very many females would apply to that location. Just same type of thing as bakery positions. Lots of female applicants, not very many male applicants. It's nothing out of the norm.
> Q.  When you say "at that store," you're not talking about 8781, correct?
> A.  Of any– yeah, of the stores I was at.
> Q.  Okay. And those did not include 8781, correct?
> A.  Correct.
> Q.  And you were never concerned about the lack of female applicants at the stores that you worked in, correct?
> A.  No.

(Pl. Br., Exh. 13, pp. 271).

In the next sentence on page 4 of its brief, the EEOC similarly misinterprets the cited evidence by stating that other managers "insinuated that *gender hiring* proportions and practices at Store 8781 were within some industry norm." *Id*. (emphasis added). Again, a review of the cited portions of the depositions reveals nothing about hiring practices in relation to the gender of the applicants and those hired; the testimony is solely regarding the gender ratio of the applicants and then separately whether the applicant pool for the night stocker position at Store 8781 was consistent with industry norms.

Manager Joseph Kozak testified that his knowledge of hiring related to the claims in this case included "[h]iring of night crew for Cub Foods when he worked for them and hiring of night crew for Food 4 Less when I worked for them as well." (Pl. Br., Ex. 14, p. 48). He was then asked "What about the hiring of night crew for those two businesses is related to the EEOC's claim that SVT at Store No. 8781 didn't hire night crew stockers because of their gender?" *Id*. Over SVT's counsel objection, Kozak testified:

> BY THE WITNESS:
> A.  From what I understand, it was – it's the industry experience across other industries as far as hiring practices and predominant roles of an[sic] employment in night crews was valuable for the case.
> BY MS. LYBOLT:
> Q.  Tell me what information–what specific information do you think was valuable to the case?
> A.  Specifically that in the companies that I've worked for, there have not been a lot of female applicants for night crew or those applicants that were for night crew had multiple positions put down on their applications other than night crew to apply for other than night crew.

*Id*. at p. 49, ll. 5-17. Later in the deposition, the following exchange occurred:

> Q.  Have you found that–based upon your observations that SVT's hiring practices are consistent with other businesses in the industry?
> Ms. Lybolt: I'm going to object to the form of the question.
> By Mr. Long:

> Q. You can answer.
> A. Yes. I've–from what I've seen, they've been consistent.

*Id.* at p. 109, ll. 17-25; p. 110, ll. 1-2.

The EEOC also cites the deposition testimony of Manager Kenneth Nelson regarding

Nelson's personal experience in hiring for night stocker positions in the industry:

> Q. I want to know what knowledge. They've identified you as someone who has knowledge of hiring for night crew positions.
> A. I'm not sure what you're asking.
> Q. I want to know what knowledge of hiring for night crew positions you possess.
> A. If I need somebody on my night crew, I will hire somebody for my night crew.
> Q. And do you actually review applications?
> A. Yes.
> Q. And is that at Store 87–
> A. 96.
> Q. 8796, okay. And how long have you been at Store 8796?
> A. Since September 13, 2013.
> Q. Other than your experience at 8796, is there any other source of knowledge of hiring for night crew positions at SVT, LLC that you possess?
> A. No.
> Q. We're going to go back and talk about what you do at 8796 in a moment, but I want to make sure we explore this knowledge aspect of what's been disclosed here.
> What other knowledge of hiring for night crew positions anywhere do you posses?
> A. I have hired for night crew in the past for Kroger, for Mariano's, for Wal-Mart, and for Cub Foods.
> Q. And that was for a night crew stocker positions?
> A. Yes.
> Q. For all four of those employers?
> A. Yes.

(Pl. Br., Ex. 15, pp. 30-31). The EEOC then cites his testimony regarding the similarity of hiring

practices:

> Q. Have you found any significant differences between the hiring process with what you do now for SVT as compared to those three entities?
> Ms. Lybolt: Object to the form of the question.

By Mr. Long:
Q.      You can answer.
A.      They're similar.

*Id*. at p. 129, ll. 10-18.

The Court finds that the deposition testimony cited by the EEOC does not support the requested expansion of the EEOC's discovery regarding hiring demographics and practices at all of SVT's Northern Indiana stores. The EEOC has not identified any evidence suggesting that specific hiring practices for the night stocker position at Store 8781 were related to the hiring practices for that position at other stores. Although Kozak testified that he felt SVT's hiring practices are consistent with other businesses in the industry, nothing correlates this testimony with night stocker hiring or any alleged disproportionate hiring of women. Rather, this cited evidence demonstrates only that a disproportionate number of males apply for the night stocker positions, and that hiring practices *generally* are similar in the industry. The EEOC assumes the connection. Thus, the EEOC has not demonstrated that an expansion of discovery of hiring practices at SVT's Northern Indiana stores is relevant or is likely to produce relevant evidence.

Having made this holding, the Court turns to each of the specific discovery requests for which the EEOC seeks a more complete answer.

### A. Interrogatory No. 12–Accusations of Sex and/or Gender Discrimination

Interrogatory No. 12 begins:

During the relevant time frame, has Defendant or any of Defendant's managers, supervisors, Human Resources professionals, and/or any other individuals involved in Defendant's hiring and/or transfer process, been accused by an employee or applicant of sex and/or gender discrimination? If yes, please describe each complaint and/or allegation in full detail, . . . .

(emphasis added). The interrogatory goes on to request seven subcategories of information related to each complaint.

In an August 22, 2014 letter, the EEOC agreed to limit this request to sex or gender discrimination complaints made by females against any of SVT's Human Resources managers, Ultra Foods mangers who worked at Store 8781 (irrespective of what store they worked at when the complaint was lodged), or any other of SVT's disclosed managerial witnesses.

The Court finds that the modified interrogatory is reasonably calculated to lead to the discovery of admissible and relevant evidence, such as SVT's motive and intent concerning hiring night crew stockers at Store 8781, whether SVT's reason for rejecting any particular female was a pretext for discrimination, whether SVT had a preference for male applicants, and whether any such preference was a willful disregard of the female applicants' federally protected rights under Title VII, an element of the EEOC's punitive damages claim.

However, the interrogatory remains overly broad to the extent it seeks information on complaints of gender or sex discrimination against "any other of SVT's disclosed managerial witnesses." In support of its position that discovery beyond Store 8781 on this topic is relevant, the EEOC relies on its argument that there may be a "pervasive corporate culture of disfavoring female applicants from its night stocker position that extended to even its Vice President of Human Resources." (Pl. Br. 9). As set forth above, the EEOC has not identified any basis for this speculation.

Accordingly, the Court grants in part and denies in part the Motion to Compel as to Interrogatory No. 12. The Court limits Interrogatory No. 12 to sex or gender discrimination complaints from January 1, 2009, to the present made by females against any of SVT's Human

Resources managers or Ultra Foods mangers who worked at Store 8781, including managers who no longer work at Store 8781 but who worked at Store 8781 during the relevant time frame and including managers who work or worked at Store 8781 but who worked at a different store when the complaint was lodged against the manager.

SVT's initial response to the interrogatory, over its objections, provided that "Defendant is not aware of 'accusations' of sex and/or gender discrimination against its HR personnel, or its managers at the Merrillville store location." (Pl. Br. Ex. 2, p. 14). Thus, it appears that SVT has largely responded to the limited interrogatory, and SVT says as much in its response brief. SVT also represents that, to the extent other individuals are identified that were managers during the relevant time frame, the answers will be supplemented. However, (1) to the extent SVT did not provide a response that encompassed all managers (a) who worked at Store 8781 irrespective of what store they worked at when the complaint was lodged or (b) who may no longer work at Store 8781 but who worked there during the relevant time or (2) to the extent SVT's response did not include the time frame of January 1, 2009, to the present, the Court **ORDERS** SVT to provide an amended response, if appropriate.

### B. Personnel and Hiring Records

The EEOC describes its Interrogatories Nos. 6 and 10 and Requests for Production Nos. 9-10 and Nos. 12-14, and Second Request for Production No. 3 as seeking information that will reveal those individuals hired or otherwise selected to work as a night crew stocker in Merrillville, those who made such decisions, those who supervised night crew stockers, information about those supervisors, and in the instance of EEOC's Second Request for Production No. 3, the gender demographics of night crew stockers hired since 2010 by SVT at its other Northern Indiana stores.

1.    *Missing Information*

The EEOC seeks an order compelling further responses from SVT for Interrogatories Nos. 6 and 10 and Requests for Production Nos. 9-10 and Nos. 12-14. In its motion, the EEOC represents that the following information contained within these interrogatories and requests for production has not been produced:

(a)    Personnel files for night crew managers (LaCarmie Sterling; Justin Powell, James Graham) or store manager Doug Smith, which is information responsive to Interrogatory No. 6 and Request for Production No. 9

(b)    Audit documents concerning hiring identified by Human Resources Director Jessica Hon during her deposition, which is responsive to Interrogatory No. 6 and Requests for Production Nos. 9-10, 12-14

(c)    Personnel files, including interview guides and summaries with assessment results for night crew stocker hires: Jason Adams, Marcus Heart, Terrell Johnson, Florida Porter, Damien Roberts, Jon Springer, Dominique Timmons, Albert Washington, Dana Washington, and Dustin Westerfield, which are responsive to and Requests for Production Nos. 10, 12-14

(d)    Interview guides and summaries with assessment results for: Armando Armand; Jarvis Armstead; Corey Cain, Erin Cooke; Andrew Dailey; Penita Harris; Bobby Henderson; Patrick Hernandez; Morgan (Ducre) Lowe; Nicole Miller; Timothy Moore; Bradley Pentecost; Timothy Wilson, and any other female applicant who SVT interviewed but rejected, if any, which are responsive to Requests for Production Nos. 10, 12-14

(e)    Interview guides for Christopher Bynum, which is responsive to Requests for Production Nos. 10, 12, and 14

(f)    Summaries with assessment results are missing for: Christian Reed, Spurgeon Jackson, Clayton Hubbert and Joseph Planner, which are responsive to Requests for Production Nos. 10, 12, and 14

In its motion, the EEOC has not explained how it knows that the information related to the individuals on this list is responsive to each discovery request, how the lack of production is a violation of each discovery request, and what objection, if any, SVT made to producing the

information on each individual. In other words, it is not clear how this list constitutes a "demonstrated deficiency," a term used by the EEOC in its reply brief. If the deficiencies are listed in the attachments, the EEOC has not identified them in its brief or drawn the Court's attention to the specific supporting documentation. Nevertheless, SVT presumably understands the meaning of each of these names and whether or not they are relevant to the requested discovery. Yet, SVT does not acknowledge this list in its response brief or offer any argument that these documents either have already been produced or are not discoverable.

Accordingly, the Court **ORDERS** SVT to serve the discovery listed in items (a)-(f) above. If any document is missing, SVT is ordered to state in its response that the document is missing, provide an explanation to the extent possible as to why the document is missing, and indicate whether and when it is likely that SVT will be able to locate the document.

In addition, the Court addresses the relevant scope of each of the discovery requests at issue.

a.      Interrogatory No. 6 and Request for Production No. 9

Interrogatory No. 6:

Identify all persons who played any role in the hiring process for night crew stocker positions at Defendant's 8781 Merrillville Ultra (6110 Broadway) facility at any time since January 1, 2009, including:
a. Name, social security number, address, and telephone number;
b. Position titles and current employment status;
c. Dates involved in hiring process; and
d. Duties and/or responsibilities and/or exact role in hiring process.

Request for Production No. 9:

Provide a copy of all employment-related documents, including but not limited to, any originally submitted applications, resumes, cover letters, . . . and/or statements made, taken, created, received or retained by any of Defendant's employees within or outside Defendant's personnel or human resources department (excluding medical or health-related information) or by any agent or third party vendor contracted by Defendant concerning or relating to all individuals identified in any part of

Defendant's response to Interrogatory No. 6 of Plaintiff's First Set of Interrogatories to Defendant.

The Court orders that the relevant scope of Interrogatory No. 6 and Request for Production No. 9 includes not only those individuals who had an official title or role as a hiring manager but those who, as in the words of the interrogatory, "played any role in the hiring process" for the night crew stocker position at store 8781. This includes, but is not limited to, managers within the night crew stocker department who assisted, managers from other departments who assisted, or any other employee who organized the applications, took messages from applicants, set up interviews, or performed any other tasks related to hiring. Only SVT knows any other ways in which individuals "played a role" in the hiring process. The Court **ORDERS** SVT to provide a supplemental response to Interrogatory No. 6 and Request for Production No. 9 consistent with the broad scope of these requests.

b.      Interrogatory No. 10

Interrogatory No. 10 provides:

Identify each of Defendant's 8781 Merrillville Ultra (6110 Broadway) facility employees, current or former, since January 1, 2009.
(The Interrogatory then lists the identifying information to be provided for each individual.)

SVT represents that it has responded to this interrogatory twice, and that, "[o]utside of miscellaneous missing files due to transfers of employees to stores other than 8781, SVT has properly responded." (Resp. 4). In its reply, the EEOC contends that none of the discovery produced by SVT conclusively shows all night crew stocker hires and conflicts with each other in some respects and that the data obtained from SVT's third party vendor conflicts with SVT's internally produced data. The EEOC asks the Court to compel SVT to definitely identify its employees. The Court takes SVT's response at face value and as having been made in good faith. Interrogatory No.

10 does not ask SVT to explain differences between its discovery responses and discovery produced by FMS and Kronos. Therefore, the Court denies the Motion to Compel as to Interrogatory No. 10.

c.      Requests for Production No. 10

Request for Production No. 10 states:

Provide a copy of all employment-related documents, including but not limited to, any originally submitted applications, resumes, cover letters, . . . and/or statements made, taken, created, received or retained by any of Defendant's employees within or outside Defendant's personnel or human resources department (excluding medical or health-related information) or by any agent or third party vendor contracted by Defendant concerning or related to all individuals identified in any part of Defendant's response to Interrogatory No. 8 of Plaintiff's First Set of Interrogatories to Defendant.

Interrogatory No. 8:[3]

Identify each individual who applied for or otherwise sought a night crew stocker position at Defendant's 8781 Merrillville Ultra (6110 Broadway) facility from December 1, 2009 to present. (The Interrogatory then lists the identifying information to be provided for each individual.)

SVT represents that it has already produced this information from internal records and records from FMS and Kronos and that Kronos has provided additional documentation in response to the EEOC's subpoena. SVT represents that it has identified additional records that were not in possession of Store 8781 and, at the time of the response brief, was in the process of assembling copies for production to the EEOC. SVT also maintains that there is no impasse as to any missing files. In reply, the EEOC clarifies that what is still missing is "summaries with assessment results," which is included as item (d) on the list in the opening of Section 1 above. SVT did not offer any specific explanation in its response brief as to why it is unable to produce these relevant documents.

---

[3] Interrogatory No. 8 is included because the EEOC cites Request for Production No. 10, which references Interrogatory No. 8. Although the EEOC failed to include Interrogatory No. 8 or SVT's response to Interrogatory 8 in Exhibits 1 and 2 to its motion, the Court was able to locate both in Exhibit 1 to SVT's response brief.

The Court has already ordered that the items on the list be produced. Therefore, the Court grants the Motion to Compel as to Request for Production No. 10 with the response requirements set forth in the section ordering that SVT produce the items on the EEOC's list.

d.      Request for Production Nos. 12, 13, 14

The Court first addresses Requests for Production Nos. 12 and 13, which are related. Request for Production No. 12 provides:

> Any and all documents, including but not limited to notes, emails and/or text messages, taken, drafted, sent, or received concerning Defendant's decision to interview and/or hire any male applicant hired for a night crew stocker since January 1, 2010.

Request for Production No. 13 provides:

> Any and all documents, including but not limited to notes, e-mails and/or text messages, taken, drafted, sent, or received concerning Defendant's decision not to interview and/or hire any female applicant for a night crew stocker since January 1, 2010.

In its response brief, SVT argues that Requests Nos. 12 and 13 are overbroad because they seek information from all of SVTs stores. However, the EEOC clarifies that it only seeks the responsive documents for Store 8781. Thus, to the extent SVT has not already done so, the Court grants the Motion to Compel and **ORDERS** SVT to respond to Requests for Production Nos. 12 and 13 for Store 8781 only.

Request for Production No. 14 provides:

> Complete copies of all schedules, diaries, planners, notes, post-its or other documents that reflect applicant interviews done or scheduled to be done at the 8781 Merrillville Ultra (6110 Broadway) facility for night crew stocker positions since January 1, 2009.

In its response brief, SVT states only that it has already provided its response to this request. Except for the specifically identified information in items (b)-(f) on the list above that are responsive to Request for Production No. 14, the Court denies the Motion to Compel on this request.

2.    *Destruction/Retention of Documents*

The EEOC makes arguments in the opening brief and reply brief regarding the retention and/or destruction of documents by SVT. However, the EEOC does not ask for any specific relief related to any failure by SVT to retain documents. Thus, the Court makes no ruling on this issue.

3.    *Second Request for Production No. 3*

The EEOC seeks a full response to Request for Production No. 3, which seeks the identification of night crew stockers hired by SVT at its other Northern Indiana stores. Second Request No. 3 provides:

> For each of Defendant's stores located in Northern Indiana, including Jasper, Lake, Porter, and LaPorte Counties, including Store 8781 to the extent not previously produced, produce database or electronic records (such as, but not limited to, that available through Defendant's third-party FMS system and in a spreadsheet formula similar to what Defendant produced on June 20, 2014 in supplemental response to the EEOC's initial discovery requests), identifying by name, address, telephone number, gender, store identification number, position identification number, and dates of employment of all night crew stockers hired by Defendant from January 1, 2010 to July 1, 2014.

(Pl. Br., Ex. 10, p. 4).

SVT objected to Second Request No. 3 on the basis that it is vague, overbroad, and unduly burdensome due to its unlimited scope. SVT further objected on the basis that it is overbroad in the "nature of the request without specificity to the relevance of such a request to the allegations of gender discrimination for the night crew position at Store 8781 in Merrillville, Indiana." *Id.* SVT asserted that a request for documents from all of SVT's stores in Northern Indiana exceeds the scope

of the EEOC's underlying investigation, exceeds the allegations in the Complaint, and amounts to a "fishing expedition."

As set forth at the outset of the Analysis of the Opinion, the Court agrees with SVT and sustains its objection as to relevancy. Other than its own suspicions, the EEOC has not offered the Court evidence demonstrating that, in this case, expanding the scope of discovery to all of SVT's stores in Northern Indiana will produce relevant evidence or lead to the discovery of relevant evidence.

In its response brief, SVT argues that the EEOC cannot use the current lawsuit as a tool to investigate other claims that are not the subject of the underlying lawsuit. The EEOC has expressed that it is not seeking the information for the purposes of broadening the Complaint but rather that it seeks this information as "background information and rebuttal evidence concerning assertions by SVT witnesses that the hiring at Store 8781 was within some industry norm or indicative of female interest in the position company wide." (Pl. Br. 13). The deposition testimony cited earlier were answers given in response to questions directed by the EEOC to SVT witnesses. Yet, there is still no evidence before the Court that hiring decisions on night crew personnel were made anywhere other than at the store level. Any actions taken at other stores are not the subject of the instant lawsuit.

The only case cited by the EEOC in support of its request for discovery beyond Store 8781 that addresses a request for discovery from a company's other locations is *Barr v. Smith & Wollensky Restaurant Group, Inc.*, 238 F.R.D. 222, 222 (S.D. Ohio 2006). In *Barr*, the plaintiff alleged that she was not hired as a bartender at a restaurant because she is a female, and she further alleged that the restaurant did not hire women as bartenders at any of its restaurants located in the

United States and, thus, was a national policy. There is no similar allegation in this case by the EEOC that SVT has a policy of not hiring women at all of its stores in Northern Indiana. Rather, the allegations concern only Store 8781.

Although *Barr* was a single-plaintiff, single-facility case, and the instant lawsuit is brought by the EEOC at a single facility, the court's analysis is nevertheless persuasive:

> In such cases courts have typically concluded that the appropriate scope of discovery depends upon whether there is credible information suggesting that an employer followed similar hiring policies or procedures both at the location where the alleged discrimination occurred and at other similar locations. If the location was clearly locally run, involved considerations unique to that location, and the hiring decisions were completely unaffected by company-wide policies or procedures, courts have generally restricted discovery to events at that location.

*Barr*, 238 F.R.D. at 223. As discussed above, the EEOC has not offered credible information suggesting that the night crew stocker managers at Store 8781 were hiring based on a company-wide policy or policies or procedures at other locations.

Notably, the EEOC relies solely on deposition testimony that it elicited from SVT witnesses based on the form of the question posed by the EEOC. SVT has not yet articulated a defense that its hiring practices were not discriminatory as consistent with hiring throughout the company or the industry, nor has SVT asserted as a defense that the ratio of female applicants at Store 8781 is consistent with the applicant ratio at its other stores or in the industry. The Court cautions that, if SVT asserts either of these positions at any time in the litigation, then the information sought by the EEOC in Second Request for Production No. 3 will be relevant and discovery will be permitted (and discovery will be reopened if necessary) to allow the EEOC to pursue a response to this discovery request.

The Court denies the Motion to Compel as to Second Request for Production No. 3.

## C. Punitive Damages

Requests for Production Nos. 4-7 address SVT's financial health in relation to the EEOC's claim for punitive damages.

Request for Production No. 4: Provide a copy of documents concerning bankruptcy filings, or contemplation of filing bankruptcy, at any time during the relevant time period.

Request for Production No. 5: Provide a copy of Defendant's profit and loss statements, balance statements, and financial statements for the years 2009 through the present.

Request for Production No. 6: Provide a copy of Defendant's federal, state and local tax returns since January 1, 2010.

Request for Production No. 7: Defendant's financial budgets and/or forecasts for the years 2010 through present.

The EEOC argues that it is entitled to discovery on punitive damages at this stage of the litigation. SVT argues that the discovery is premature and should not be disclosed until the time of the jury's deliberations, and although SVT has not moved for a protective order, it attempts to demonstrate a "good cause" showing, as required by Rule 26(c)(1), that its financial information should not be disclosed at this stage of the litigation. The parties do not dispute that SVT's financial status is relevant to the EEOC's claim for punitive damages.

This Court has previously noted, "[t]he majority of federal courts, and courts within this Circuit, have permitted plaintiffs seeking punitive damages to discover information related to the defendant's financial condition *prior* to making a prima facie case that [it] may recover punitive damages." *Marshall v. GE Marshall, Inc.*, 2:09-CV-198, 2012 WL 2343368, at *4 (N.D. Ind. June 20, 2012) (emphasis added) (citing *Untied States v. Autumn Ridge Condominium Assoc., Inc.*, 265

F.R.D. 323, 327-28 (N.D. Ind. 2009) (collecting cases)). SVT cites one case from the Southern District of Indiana that balanced the factors for a protective order under Rule 26(c)(1) of protecting the "person from annoyance, embarrassment, oppression, or undue burden or expense" by staying discovery on the financial information of individual defendants for purposes of punitive damages until a later stage of the litigation. *Finch v. City of Indianapolis*, No. 1:08-CV-432, 2011 WL 2516242, at \*4 (S.D. Ind. June 23, 2011) (staying discovery of the personal financial information of individual defendants).

The Court finds that the discovery is relevant, and SVT has not made a showing of good cause for delaying the production of evidence relevant to the EEOC's claim for punitive damages in this case. However, given that a trial date is not yet set and that only SVT's most recent financial information will be relevant at the time any determination of punitive damages would be made, the Court **ORDERS** that SVT answer Requests for Production Nos. 4-7 for the period of one year prior to the date of this Order, to be supplemented with responses prior to trial for the time period from the date of SVT's current responses to that date. The Court further **ORDERS** that this information be designated as confidential under the Protective Order in place in this case. Thus, the Court grants in part and denies in part the Motion to Compel as to the Requests for Production Nos. 4-7.

### D. Night Crew Stocker Jobs/Minimum Qualification Records

The EEOC seeks information regarding night crew stocker job descriptions and/or minimum qualifications for the position in Requests for Production Nos. 19 and 20.

Request for Production No. 19 provides:

Provide a copy of all documents containing job descriptions for all stocker positions at Defendant's 8781 Merrillville Ultra (6110 Broadway) facility, including hiring criteria, requirements, and responsibilities created and in effect at any time since January 1, 2009.

Request for Production No. 20 provides:

> To the extent not produced in response to Request No. 18, provide a copy of all documents showing the minimum qualifications for a night crew stocker position at Defendant's 8781 Merrillville Ultra (6110 Broadway) facility created and in effect at any time since January 1, 2009.

The EEOC represents that SVT produced some job descriptions but has not produced a "stocking video" revealed through discovery, and, more recently, a DVD that was shown to overnight stockers during orientation. The EEOC represents that neither the DVD nor the video was produced in January when SVT made its original production. After correspondence between the parties, SVT stated on July 9, 2014, that, due to copyright issues, it would not be able to produce a copy of the materials and that it would cost $700 for the EEOC to order and purchase a set of the DVDs. The EEOC inquired into the nature of the copyright with no response from SVT. The EEOC offered to include the DVDs as an additional category of protected information in the existing Protective Order. When SVT supplemented its discovery on September 15, 2014, SVT no longer objected to producing the DVDs because of copyright issues but instead responded that the EEOC could either view the videotapes in SVT's counsel's office or else share in the cost of the purchased videos. The EEOC rests on its request to obtain a copy of the DVDs and not just be permitted to view them. The EEOC also objects that SVT has not shown any grounds for shifting the cost of production of the DVDs to the EEOC.

In its response brief, SVT asserts that it created two "in-house" copies of the training DVDs produced by third-party vendors at a minimal cost. However, without offering any evidence in support, SVT asserts that the DVDs are subject to purchase costs and copyright restrictions. SVT reasserts its offer to have counsel for the EEOC either share in the costs of the videos or, in the alternative, view the videos at counsel for SVT's office during the breaks of depositions. Again,

without documentary support, SVT alleges that its cost to obtain the videos was in excess of $500.00. Given the unclear nature of SVT's explanation of when and how it obtained the original and/or copies of the DVDs, the nature and extent of any copyright that might exist, and what the costs in excess of $500 were expended for, SVT has not met its burden of demonstrating that the cost of this discovery should be shifted on the videos and/or DVDs. *See Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 572 (N.D. Ill. 2004).

Accordingly, the Court grants the Motion to Compel as to this evidence and **ORDERS** SVT to produce to the EEOC the videos and/or DVDs that are the subject of this motion.

### E. Jessica Hon's Notes

During the EEOC's investigation, throughout which SVT was represented by counsel, EEOC investigator Johanna Shreve conducted two interviews of hiring manager Timothy Farley, who is alleged to have individually discriminated against Tiffany Swagerty. During both interviews, Attorney Long (counsel for SVT) was present. During both interviews, counsel for the EEOC took notes. During the interviews, Attorney Long instructed his client, by Jessica Hon (SVT's former human resources director), to take notes to allow him to concentrate on the examination. The statements given by Farley were in the presence of the EEOC investigator.

On its privilege log, SVT disclosed four pages of notes taken by Hon during one of these interviews, asserting the attorney client privilege and the work product doctrine. The Court finds that, because Hon took the notes at counsel's direction for counsel's use, they are protected by the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A) (protecting from disclosure those "documents and tangible things that are prepared in anticipation of litigation or for trial by and for another party

or its representatives"). Moreover, to the extent the EEOC seeks any factual information noted by Hon, the EEOC's investigator was present during the interviews and had an equal opportunity to take notes on the same factual matters.

Accordingly, the Court denies the Motion to Compel as to Jessica Hon's notes.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Defendant's Motion for Leave to File Additional Response to EEOC's Motion to Compel [DE 94], and **GRANTS in part** and **DENIES in part** the EEOC's Motion to Compel SVT's Complete Responses to Written Discovery [DE 86]. The Court **ORDERS** SVT to comply with this Order on or before **January 12, 2015**.

So ORDERED this 15th day of December, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record